**Susan L. VOKACEK, Appellant and Cross-Appellee,**

v.

**James M. VOKACEK, Appellee and Cross–Appellant.**

Nos. 5–6790, 5–6840.

Supreme Court of Alaska.

March 7, 1997.

A. Fred Miller, Ketchikan, for Appellant and Cross–Appellee.

William F. Tull, Tull & Associates, Palmer, for Appellee and Cross–Appellant.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

FABE, Justice.

### I. INTRODUCTION

In this post-divorce proceeding, Susan Henry (formerly Vokacek) challenges the superior court's order granting James Vokacek a child support credit, the court's award of attorney's fees, and the interest rate applied by the court to past due child support. Susan further contends that the court erred in failing to enforce the parties' property settlement agreement.

James Vokacek cross-appeals, arguing that the superior court erred in its valuation of a homesite entry permit and in its calculation and allocation of his child support payments. James also contends that the court's award of attorney's fees to Susan was excessive.

### II. FACTS AND PROCEEDINGS

Susan and James were married in August 1981 in Anchorage. They were divorced in December 1986, and Susan was granted custody of their two minor children. In their property settlement agreement, James promised to pay child support of $250 per month per child while "gainfully employed" and $100 per month if unemployed. James also agreed "to at all times make best efforts to remain gainfully employed."

The agreement also gave James ownership of the couple's homesite entry permit in Thorne Bay in exchange for his lump sum payment to Susan of $5,000 before October 21, 1986. James paid the $5,000 to Susan in January 1987, and Susan then signed a quit-claim deed relinquishing her interest in the homesite. However, James failed to "prove up" on the homesite entry permit,[1] and his interest expired in November 1991. Despite James's forfeiture of the interest, the State Department of Natural Resources was still willing to allow Susan to proceed with the homesite application. In December 1993 James stipulated to a modification of the divorce agreement awarding the homesite entry permit to Susan, and the trial court approved this modification in January 1994.[2]

In the seven years following the divorce, James failed to fulfill the majority of his child support obligations. James's father died in June 1993, leaving roughly half of his estate to James.[3] In February 1994, after learning about James's inheritance, Susan moved the court for post-judgment relief seeking past due child support and an order directing the estate of James's father to withhold distribution to James until his past due child support was paid. Susan also moved the court for an increase in the child support order. The court held an evidentiary hearing in April 1994.

In June 1994 the superior court entered orders granting Susan $22,052.21 in past due child support and interest.[4] The court ordered the personal representative of James's father's estate to withhold this amount from James's inheritance and pay it over to Susan. The court also ordered the personal representative to pay $25,000 to a bank to be invested and distributed to Susan for child support at the rate of $250 per child per month during the children's minority. Final-

---

1. "Proving up" is the perfection of an ownership interest in the homesite. An interest is perfected when the permit holder meets the State's requirements to obtain a deed to the property. The State owns the land, and under a homesite program gives the permit holder the right to live on the land and attempt to meet the State's length of residency and land improvement requirements to obtain a deed to the land. Until a deed is obtained the permit holder's interest in the land is not alienable. AS 38.08.040—.120.

2. According to James's testimony, he had been trying to sign over his interest in the permit to Susan for a couple of years, but the Department of Natural Resources did not allow him to do so until he signed the stipulation to modify the divorce agreement.

3. James's share of the estate was worth more than $90,000.

4. This represents the court's calculation of past due child support in the amount of $16,997.34 and $5,057.87 in interest. The interest arises from James's 1986 obligation to pay Susan $5,000 in exchange for the homesite at Thorne Bay. The court erroneously found that James had never paid Susan the original $5,000, and although the court viewed the transfer of the property back to Susan in 1993 as creating a "wash" with regard to the $5,000, the court held that the interest on the obligation at 10.5% left $5,057.87 due and payable to Susan as interest.

ly, the court awarded Susan $1,500 in attorney's fees.

Susan filed a motion for reconsideration requesting an increase in the amount of attorney's fees and an increase in the amount to be deposited in trust for the future support of the children. James filed a "Motion for a New Trial." The superior court granted a new hearing, which was held in August 1994. On October 6, 1994, the court made the following findings:

Two issues present themselves after the hearing on reconsideration of August 26, 1994. First, it is now clear, and the parties agree/concede that the Five Thousand Dollar ($5,000.00) payment required in paragraph four of the December 15, 1993,[5] agreement was in fact made, if a few months late. In the June 14, 1994, Order the Court treated defendant's December 15, 1993, transfer of his interest in the property to plaintiff as a "wash"—satisfying the debt, although supporting an award of Five Thousand Fifty–Seven and 87/100th Dollars ($5,057.87) in interest.... Therefore the judgment of June 13, 1994, will be modified to credit defendant with Five Thousand Dollars ($5,000.00) for the transfer and to delete the Five Thousand Fifty Seven and 87/100th Dollars ($5,057.87) interest item. This difference reduces the judgment by Ten Thousand Fifty-seven and 87/100th Dollars ($10,057.87).

The second issue to be resolved stems from the confusing accounting employed by the [Child Support Enforcement Division]. The Court in the June 14, 1994, Order abandoned all hope of making sense of the numbers shown on their ledgers.... Only One Thousand Four Hundred Forty–Seven Dollars ($1,447.00) ... was "post divorce" and will be considered as child support. Adding this credit into the arrearage calculation of Sixteen Thousand Nine Hundred Ninety–Four and 34/100th Dollars ($16,995.34) reduces the same to Fifteen Thousand Five Hundred Forty-seven and 34/100th Dollars ($15,547.34). Less Ten Thousand Fifty-seven and 87/100th Dollars ($10,057.87) the judgment

now reads Five Thousand Four Hundred Eighty-nine and 47/100th Dollars ($5,489.47).

The court's award of $101.64 in costs to Susan was not disturbed, but the amount of the trust account to be established was increased to $27,000. The court also reconsidered its initial award of attorney's fees and increased the award to $3,659.69. Thus, the October 1994 order awarded Susan $9,250.80, bearing interest from June 13, 1994, until paid.

Susan filed a motion for reconsideration alleging that the $5,000 credit James received against the child support arrearages was erroneous. Susan also requested that the court add $250 in previously awarded costs to the judgment. On October 11, 1994, the court issued an amended judgment awarding Susan $9,500.80, which reflected the addition of $250 in costs previously awarded to Susan.

## III. DISCUSSION

Susan raises the following issues on appeal: (1) whether the superior court erred in reducing the judgment against James by $10,057.87; (2) whether the superior court erred in not enforcing the portion of the property settlement agreement where James agreed to "at all times make best efforts to remain gainfully employed;" (3) whether the award of attorney's fees was inadequate; and (4) whether the court erred in ordering that interest on past due child support would accrue at 10.5% per annum.

James's cross-appeal raises additional issues: (1) whether the superior court erred in valuing the Thorne Bay homesite at $5,000; (2) whether the superior court erred in its calculation and allocation of his child support payments; and (3) whether the court's award of attorney's fees to Susan was excessive.

### A. Whether the Superior Court Erred in Granting James a Credit against Past Due Child Support

Susan argues that the superior court erred in granting James a child support credit of

**5.** The court is referring to the parties' December 15, 1986 property settlement agreement.

$5,000 based upon his stipulation to a modification of the parties' divorce decree transferring ownership of the parties' homesite entry permit to Susan. Susan asserts that the court lacked the authority to take this action.[6]

### 1. *Did an agreement exist?*

■ Susan maintains that while she and James agreed to modify the divorce decree to permit Susan the opportunity to prove up on the homesite entry permit, they made no agreement that James would receive a child support credit or any other consideration in return for this agreement. Susan further argues that James had lost his right to proceed with the homesite entry permit and thus gave up nothing in signing the stipulation. Susan therefore contends that James is not entitled to a credit against child support arrearages.

The stipulation provided:

The parties stipulate that the Divorce Decree entered on December 15, 1986 should be modified to award the following described property to Plaintiff, Susan L. Henry (formerly Vokacek).

. . . .

The basis for this Stipulation is that there are child support arrearages due to Plaintiff; that Defendant has lost the ability to patent the above property and that the Department of Natural Resources is willing to allow Plaintiff to patent the above described property on the Court's entry of this Stipulated modification.

James argues that his perception of the stipulation was that "if I signed the property and the house over to her, that would take care of the back child support."

Significantly, Susan's attorneys drafted the stipulation, the meaning of which is now at the heart of this appeal. Although Susan asserts that the language in the stipulation regarding child support arrearages was "mere surplusage," its inclusion is highly suggestive of an agreement to reduce the arrearages. The plain language of the stipulation states as the first "basis" for the stipulation "that there are child support arrearages due." Given that this was drafted by Susan's attorneys, it is indicative of an intent on Susan's behalf that a portion of James's outstanding child support obligation would be reduced in exchange for his stipulation.

The trial court examined both the written agreement and extrinsic evidence regarding the parties' intent and their reasonable expectations at the time the stipulation was entered. "Because extrinsic evidence was presented . . . regarding interpretation of the parties' agreement, we are confined to determining whether the facts support the trial court's interpretation." *Fairbanks N. Star Borough v. Tundra Tours, Inc.*, 719 P.2d 1020, 1025 (Alaska 1986) (citing *Jackson v. Nangle*, 677 P.2d 242, 247 n. 4 (Alaska 1984)). We will not reverse the trial court's factual findings unless they are clearly erroneous. *Id.* While there was no explicit agreement between these parties that James would receive credit in a specified dollar amount against his child support arrearages, the superior court's ruling that the stipulation was intended to provide at least a partial offset against those arrearages was not clearly erroneous.

### 2. *Did the court err in its calculation of the value of the Thorne Bay homesite entry permit?*

■ In its order of June 14, 1994, the superior court found that "the stipulation . . . does not state precisely how the alteration should impact these arrearages." It determined, however, that "[t]he equitable way to handle this exchange is to view it as a 'wash' against the original $5,000 debt from defendant to plaintiff."[7] On appeal James argues

---

**6.** In his cross-appeal, James asserts that "Susan's own accounting and testimony revealed two payments of $5,000 each" as the basis for his contention that the superior court erred in its calculation and allocation of credit for child support payments he made. A review of Susan's testimony does not indicate she received duplicate payments, nor does James ever contend that

he made duplicate payments. In addition, James concedes that the Child Support Enforcement Division's audit work sheet confirms only one $5,000 payment.

**7.** During the proceedings prior to this order both parties were under the impression that James

that the correct value of the homesite is $10,000, rather than $5,000 as the superior court determined. James offers nothing in support of this valuation except his own opinion that "he considered the value of the realty to be at least $20,000."[8] James appears to be asking this court to credit his arrearages for the value of the actual homesite property; however, the stipulation did not award Susan actual realty, but instead transferred to her the homesite entry permit.

The trial court was entitled to take into account the value of $5,000 Susan and James assigned to the homesite entry permit in their original property settlement agreement. There was no evidence that the value of the permit itself had increased in value. Moreover, Susan's uncontradicted testimony indicates that she would have to expend approximately $10,000 in order to patent the homesite. Therefore, the trial court did not err in finding that $5,000 was the appropriate value to be placed on the permit upon its transfer to Susan.[9]

### B. *Whether the Superior Court Erred in Failing to Enforce the Parties' Divorce Agreement*

■ Susan argues that the superior court erred in failing to enforce the portion of the property settlement in which James agreed to make his best effort to remain employed.

The parties' divorce agreement provides in relevant part:

> The HUSBAND shall pay unto the WIFE through the Child Support Enforcement Division the sum of Two Hundred Fifty ($250.00) Dollars per month per child while the HUSBAND is gainfully employed and One Hundred ($100.00) Dollars per month per child when the HUSBAND is unemployed for the maintenance and support of the above named children of the parties during their minority or until sooner emancipated. *Husband covenants and agrees to at all times make best efforts to remain gainfully employed.*

(Emphasis added.) Susan contends that James's failure to remain employed is purely voluntary. She maintains that all past child support should have been calculated at the rate of $250 per month per child.

The court examined James's work history, finding:

> Mr. Vokacek's testimony and affidavit shows [sic] that he left his steady employment in Thorne Bay after October of 1988 to relocate to Wasilla. He quickly moved to Kodiak to enter the fishing industry there but was unable to gain paying employment and he moved yet again, in January of 1989 to Ouzinkie, near Kodiak. There he lived a "subsistence" lifestyle of

---

had not paid the $5,000 to Susan in exchange for her interest in the homesite entry permit.

8. James argues that at the time of the stipulation the homesite belonged entirely to him. In fact, at the time of the stipulation James's homesite entry permit had expired, and he no longer had any interest in the realty located at Thorne Bay.

9. In calculating the amount of the judgment for back child support owed to Susan, the trial court made a mathematical error. On June 13, 1994, the superior court found that James owed Susan $16,994.34 in child support. The court also found that James owed Susan $5,057.87 in interest based upon the court's mistaken belief that James had never paid Susan $5,000 for her interest in the homesite entry permit as agreed in their original property settlement. The court added these two amounts to reach a subtotal of $22,052.21. The court did not, however, include in the total the $5,000 that it believed to remain unpaid by James, since it considered this to be a "wash" with the transfer of the Thorne Bay property.

During the reconsideration hearing on August 26, 1994, the court found, and the parties agreed, that James's parents had paid Susan $5,000 for her interest in the homesite permit on his behalf. Thus, on October 6, 1994, the court ordered that James be credited both for the $5,000 payment as well as for the $5,057.87 in interest, a total credit of $10,057.87. The court also found that James was entitled to a credit of $1,447 for previously paid child support. In applying these credits, the court first deducted $5,057.87 from the original subtotal of $22,052.21, leaving $16,994.34, the original arrearage calculation. The court then deducted $1,447 to arrive at $15,547.34 total arrearages due. Finally, the court deducted an additional $10,057.87, representing the $5,000 and $5,057.87 credits to arrive at a subtotal of $5,489.47. Thus, the court erroneously subtracted $5,057.87 twice from the amount due Susan, and the correct amount of the trial court's judgment should have been $10,547.34. This error can be corrected by the superior court on remand pursuant to Alaska Civil Rule 60(a).

"boat sitting" and odd jobs bartered for the necessities. In September, 1992, he returned to his parents' home to care for them. They have since passed on—the last in June of 1993.

In 1989 he had some portion of 2 months of regular employment; in 1990 some portion of 2 months; and in 1992 some portion of 6. He worked three months in 1993 (albeit not "full time"); spent three months in jail, and was unemployed the other six. He is and has been employed since 5–1–94.

In *Pattee v. Pattee,* 744 P.2d 658 (Alaska 1987), we held that it was an abuse of discretion for a trial court, without considering all of the circumstances, to base its child support order on the existing income of a noncustodial father who voluntarily quit a well-paying job to return to school. We concluded:

> On the one hand we do not believe that an obligor-parent should be "locked in" to a particular job or field during the minority of his or her children.... On the other hand, the children of the marriage and the custodial parent should not be forced to finance the noncustodial parent's career change. We believe the better rule is stated by the Montana Supreme Court: "[T]he judge [is] to consider the nature of the changes and the reasons for the changes, and then to determine whether under all the circumstances a modification is warranted." *In re Marriage of Rome v. Rome,* 190 Mont. 495, 621 P.2d 1090, 1092 (1981).

*Id.* at 662 (citations omitted); *see also Nass v. Seaton,* 904 P.2d 412, 418 (Alaska 1995); *Pugil v. Cogar,* 811 P.2d 1062, 1065–67 (Alaska 1991); *Patch v. Patch,* 760 P.2d 526, 529 (Alaska 1988) (concluding even where non-custodial parent does not voluntarily resign from job, trial court must consider all circumstances of change in employment to determine whether modification of amount of child support is warranted).

While the superior court correctly identified the issue before it as whether Mr. Vokacek's periods of unemployment were "a result of economic factors or purely personal choices," the superior court never resolved this issue, instead finding:

> Had Mr. Vokacek been an accountant, shoe salesman, or other such city dweller and chose to move to the "boondocks" the court would most likely find that his idleness over the past few years was by choice and unjustified under our case law. However, Mr. Vokacek made this lifestyle choice at least as early as 1983 when the couple moved to their remote homesite in Thorne Bay. Had the family stayed together things might well not have been significantly different.

In the above finding the court appears to reason that since James has never been an "accountant, shoe salesman or other such city dweller," his periods of unemployment have not been by choice. In the next sentence, however, the court refers to James's decision to live a subsistence lifestyle in a remote part of Alaska as a "lifestyle choice," which was consistent with that made prior to the parties' divorce. Given the lack of clarity of the finding as to whether James "at all times [made] best efforts to remain gainfully employed" subsequent to the divorce, this issue is remanded to the superior court for further findings as to whether James's periods of unemployment were voluntary and for recalculation of the child support due, as necessary.

C. *Whether the Superior Court's Award of Attorney's Fees of $3,659.69 to Susan Constitutes an Abuse of Discretion* [10]

The superior court originally awarded Susan $1,500 in attorney's fees pursuant to

---

**10.** This court reviews an award of attorney's fees under Alaska Civil Rule 82 for abuse of discretion. *Lowe v. Lowe,* 817 P.2d 453, 460 (Alaska 1991); *O'Link v. O'Link,* 632 P.2d 225, 231 (Alaska 1981). Under this standard

> [w]e will find that a trial court abused its discretion only "when we are left with a definite and firm conviction, after reviewing the

whole record, that the trial court erred in its ruling."

*Buster v. Gale,* 866 P.2d 837, 846 n. 9 (Alaska 1994) (quoting *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982)). "An abuse of discretion is established where it appears that the trial court's determination as to attorney's fees was manifestly unreasonable."

Alaska Civil Rule 82. After the hearing on reconsideration, however, the court awarded Susan $3,659.69 finding that

> Plaintiff's June 22, 1994, Motion for Reconsideration makes a compelling argument in that it reveals considerably more and more complex litigation activity than the Court had discerned. That effort has, of course, only been exaggerated by these later proceedings. Returning to Alaska R. Civ. P. 82 and applying the schedule therein results in an award of twenty percent (20%) of the "contested with trial" amount of Five Thousand Four Hundred Eighty-nine and 47/100th Dollars ($5,489.47)— One Thousand Ninety-nine and 69/100th Dollars (*$1,099.69*); and ten percent (10%) (first $25,000.00) and three percent (3%) (next $2,000.00) of the Twenty-seven Thousand Dollars ($27,000.00) prospective support obligation—Two Thousand Five Hundred Dollars ($2,500.00) plus Sixty Dollars ($60.00) or Two Thousand Five Hundred Sixty Dollars (*$2,560.00*)—a total of Three Thousand Six Hundred Fifty-nine and 69/100th Dollars (*$3,659.69*).

Susan argues that this award is inadequate and seeks an additional award of attorney's fees based on James's lack of good faith and vexatious conduct. Susan also contends that full actual reasonable attorney's fees should be awarded in child support arrearage actions.

James argues that the attorney's fees award to Susan is excessive and disproportionate to the amount of child support arrearages. James maintains that the fee award based on the amount to be placed in trust is inappropriate because the value and placement of the trust were never in issue.[11] James also argues that he, not Susan, is the prevailing party, and as such should have been awarded attorney's fees.[12]

■ Attorney's fees are appropriately awarded under the prevailing party standard of Rule 82 for post-judgment money and property issues. *Lowe v. Lowe,* 817 P.2d 453, 460 (Alaska 1991). Rule 82(2) directs payment of attorney's fees to the prevailing party in a civil suit in accordance with set percentages. Rule 82(3)(G) provides for variation from the calculation under Rule 82(2) if the court determines a variation is warranted because of "vexatious or bad faith conduct."

■ In support of her argument that James did not proceed in good faith and engaged in vexatious conduct Susan refers to various postponements and continuances James was granted as well as the failure of James to produce certain evidence.

We conclude that the superior court's award of fees does not constitute error. Where the question is whether a party has acted in bad faith or engaged in vexatious conduct, we have emphasized that "mere evasiveness in responding, contentiousness over difficult issues, or delay in completing testimony do not, in themselves, constitute bad faith or vexatious conduct. . . . Conduct justifying an increased award must be such that the parties are prevented from litigating the action on an equal plane." *Kowalski v. Kowalski,* 806 P.2d 1368, 1373 (Alaska 1991). The superior court did not find that the record demonstrates conduct by James which rises to this level, and we agree. However, given our holding that the superior court made a math error, the issue of attorney's fees must be remanded to the court for recomputation based on the corrected judgment sum.

D. *Whether the Superior Court Erred in its Order Directing Interest on Past Due Child Support to Accrue at 10.5% Per Annum*

■ Susan argues that the trial court erred in its amended judgment dated October 11, 1994, in providing that interest on past due child support would accrue at the

---

*Kowalski v. Kowalski,* 806 P.2d 1368, 1372 (Alaska 1991) (quoting *Palfy v. Rice,* 473 P.2d 606, 613 (Alaska 1970)).

**11.** James contends that he agreed to set aside in trust sufficient money to cover contingent remaining support. James's citations to the record, however, do not support his argument.

**12.** James offers no legal support for this argument.

rate of 10.5% per annum.[13] Susan maintains that the correct interest rate is 12% per annum pursuant to AS 43.05.225(2)(B), AS 25.27.020, and AS 25.27.025.

AS 43.05.225(2)(B) provides:

Unless otherwise provided

(2) the interest rate is 12 percent a year for

. . . .

(B) arrearages for child support as provided in AS 25.27.025 unless a lesser rate authorized by that section applies.

AS 25.27.025 provides:

The rate of interest imposed under AS 25.27.020(a)(2)(C)[14] shall equal the rate imposed under AS 45.05.225 or a lesser rate that is the maximum rate of interest permitted to be imposed under federal law.

James admittedly owes child support arrearages that date back many years. He acknowledged these arrearages in an affidavit executed March 8, 1994. Although James argues that Susan has "fail[ed] to state a *prima facie* case for imposition of the 12 percent interest rate to the alleged arrearages," in part because she failed to prove that James had notice of the arrearages, James's assertion that he had no notice of the arrearages is without merit.

While in its order of June 14, 1994, the superior court directed that "[i]nterest on child support arrearages accrues at 12% per year (or 1% per month)," the court erroneously directed in its amended order of October 11, 1994, that interest on child support arrearages would accrue at 10.5%.

## IV. CONCLUSION

We AFFIRM the order of the superior court granting James a $5,000 credit against child support arrearages; REMAND the calculation of the judgment owed to Susan to allow correction of a mathematical error; REMAND the issue of whether James's periods of unemployment were voluntary for fur-

13. Susan agrees that interest on costs and attorney's fees accrues at the rate of 10.5% per annum.

14. AS 25.27.020(a)(2)(C) provides in part:

ther findings; REMAND the issue of attorney's fees for recomputation based upon the correct judgment sum; and REVERSE the court's order directing interest on child support arrearages to accrue at 10.5% per annum.

subject to AS 25.27.025 and to federal law, a uniform rate of interest on arrearages of support that shall be charged the obligor upon notice if child support payments are 10 or more days overdue or if payment is made by a check backed by insufficient funds.