Cynthia ROBINSON, Appellant,

v.

Dennis ROBINSON, Appellee.

No. S–7924.

Supreme Court of Alaska.

July 17, 1998.

David D. Clark, Law Office of David D. Clark, Anchorage, for Appellant.

James D. Babb, Jr., Law Office of James D. Babb, Jr., Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Cynthia Easton (formerly Robinson) appeals the superior court's order decreasing the child support obligations of her ex-husband, Dennis Robinson. She argues that a remand is required because the superior court failed to enter findings of fact. She also contends that the superior court erred in (i) failing to consider all of Robinson's sources of income; (ii) calculating his income based on his actual, rather than his potential, earning capacity; and (iii) refusing to increase the support award to reflect the high cost of living in Unalaska. We remand to the superior court for findings and for consideration of Easton's arguments.

## II. FACTS AND PROCEEDINGS

Cynthia Easton and Dennis Robinson married in 1983 and had four children together. In 1993 the couple dissolved their marriage. Their dissolution agreement included a property settlement and child support agreement. Pursuant to the agreement, Easton assumed physical custody of all four children, and Robinson promised to pay her $2,000 a month in child support.

The parties did not use the percentages in Alaska Civil Rule 90.3 to calculate the child support figure.[1] Instead, Robinson agreed to pay more than the amount required by Rule 90.3 in part because he recognized that the cost of living in Unalaska was higher than in the rest of the state.

Shortly after signing the dissolution agreement, Robinson experienced a series of financial setbacks. First, in November 1993, the United States canceled its lease on one of his pieces of property. This lease had provided him with $1,750 per month in rental income. Then, in February 1994, Robinson's position as the interim vice president of Ounalaska Corporation ended. This position had paid $6,100 per month. As a result of these

---

1. In the dissolution form he and Easton filled out in June 1993, Robinson estimated his adjusted gross income to be $38,483.09. His actual adjusted gross income for 1993, as shown by tax returns, was $55,751. Using this latter figure, Alaska Civil Rule 90.3 would have required him to pay $1,672.53 a month.

events, Robinson quickly fell behind in his child support payments.

In July 1994 Easton filed a motion to show cause why Robinson should not be held in contempt for failing to abide by the dissolution decree. She alleged that he had violated the decree by his failure to pay child support or to abide by other promises to provide additional income for her and the children. At the time that Easton filed her motion to show cause, Robinson had not paid child support since November 1993.

Robinson opposed Easton's motion, arguing that he had experienced financial setbacks beyond his control. He also filed his own motion in September 1994, requesting the court to reduce his child support obligations.

The superior court did not hold a hearing on Robinson's child support modification motion until November 1995. At this hearing, Robinson testified about the financial troubles caused by the loss of his rental income and of his position as interim vice president. He stated that he earned only $2,400 per month at his current job, half of which went directly to CSED to pay off his child support arrears. He also testified that if he had his tools, he could increase his income three-fold by working as a mechanic. Robinson claimed that Easton had stolen his tools, worth approximately $10,000, and sold them.

The testimony at the November hearing, as well as at its December continuation, demonstrated that Robinson had two sources of income other than his wages: proceeds from the sale of two of his properties in July 1995 and dividends from the Ounalaska Corporation. Robinson had sold the two properties for a total price of $100,000. Of the sale price, $20,000 was paid to him at closing, with the remaining $80,000 to be paid in monthly $2,000 installments. After closing costs and broker's fees, Robinson was left with approximately $6,700 from the down payment, all of which went to CSED to pay his arrears. In addition, because CSED had executed a lien on the properties, Robinson assigned seventy-five percent, or $1,500, of the monthly mortgage payments to CSED as a method of paying off his past due child support.

Before the superior court had ruled on the modification motion filed by Robinson, CSED filed its own motion to modify child support. Considering only Robinson's wages, CSED calculated his adjusted annual income to be $18,444.30. It therefore concluded, using the guidelines of Rule 90.3, that his monthly child support payment should be $553 for the four children.

Easton opposed CSED's motion. She claimed that its calculation of child support was inaccurate for three reasons: (i) CSED had not considered all of Robinson's income in its calculation; (ii) the child support award should have been based on Robinson's *potential* earning capacity, which he had stated was three times his current income; and (iii) the award should have reflected the higher cost of living in Unalaska.

The superior court granted CSED's motion to modify in October 1996 and set Robinson's new child support payments at a total of $553 per month. The court entered the modification without making any factual findings, written or oral, and without responding to Easton's claims that modification was inappropriate. Easton appeals, raising the same three objections to modification that she raised in the superior court and also arguing that a remand is required because of the lack of findings.

## III. *DISCUSSION*

### A. *Standard of Review*

▮▮▮▮ This court reviews modifications of child support orders under an abuse of discretion standard. *See Patch v. Patch,* 760 P.2d 526, 529 (Alaska 1988). An abuse of discretion will be found only if "based on the record as a whole this court is left with a 'definite and firm conviction that a mistake has been made.'" *Richmond v. Richmond,* 779 P.2d 1211, 1216 (Alaska 1989) (citation omitted). Whether an item qualifies as income for the purposes of Rule 90.3 is a question of law that we review *de novo,* adopting the rule that "is most persuasive in light of precedent, reason and policy." *Nass v. Seaton,* 904 P.2d 412, 414 (Alaska 1995) (citing *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

### B. *Failure to Enter Findings of Fact*

■ Easton correctly argues that the superior court's failure to enter any findings supporting its decision requires a remand. In the context of a request to modify child support under Rule 90.3, the trial court must provide "[a]dequate findings of fact ... so that a reviewing court may clearly understand the grounds on which the lower court reached its decision." *Waggoner v. Foster*, 904 P.2d 1234, 1235 (Alaska 1995). Although we remand for further findings, we briefly address the merits of Easton's arguments opposing the modification motion in order to provide guidance to the superior court.

### C. *Consideration of Income from All Sources*

Easton argues that the court failed to consider two sources of income in determining Robinson's new child support obligations: the dividends he receives from the Ounalaska Corporation and the proceeds from the sale of his property in Unalaska. Easton is correct that CSED's income calculations, on which the superior court apparently relied, did not include these two sources of income.

#### 1. *The Ounalaska Corporation dividends*

■ Robinson contends that his dividends should not be considered income because they go directly to CSED to pay off his child support arrears. We disagree.

■ Rule 90.3 provides that income "from all sources" should be considered in determining an obligor's ability to pay. Alaska R. Civ. P. 90.3(a)(1). The rule then provides a list of items that can be deducted or excluded from gross income. Money used to pay child support arrears *for the children whose support is currently at issue* does not appear on this list. Significantly, however, the rule does exempt from income "child support and alimony payments arising from *prior relationships* ... [that] are actually paid." Alaska R. Civ. P. 90.3(a)(1)(B) (emphasis added). This provision demonstrates that the rule is intended to exempt from the obligor's income only child support payments for *other* children.[2]

Furthermore, an interpretation of Rule 90.3 that would permit parents in Robinson's situation to deduct from their income money used to pay child support arrears is incompatible with the underlying objective of the rule. "The primary purpose of Rule 90.3 is to ensure that child support orders are adequate to meet the needs of children, subject to the ability of the parents to pay." Alaska R. Civ. P. 90.3, commentary I.B. If an obligor were permitted to deduct money used to pay arrears, then it would be in his or her interest to accumulate arrears in order to decrease future child support payments. Clearly, creating such an incentive would jeopardize the rule's goal of providing for the needs of children.

#### 2. *The proceeds from the property sale*

■ Robinson also argues that the proceeds from the sale of his property should not be considered income because they are being used to pay his child support arrears. We reject his argument for the reasons outlined above. On remand, the superior court should consider both the Ounalaska Corporation dividends and the proceeds from the property sale as income.[3]

---

2. Easton also argues that money used to pay child support arrears should be included in income because it is a debt, and Rule 90.3 provides that "[p]rior or subsequent debts of the obligor, even if substantial, normally will not justify a reduction in support." Alaska R. Civ. P. 90.3, commentary VI.B.5. This provision in the rule was not intended to apply to child support debts. Instead, it explains that debt does not justify a reduction in child support because "[t]he obligation to provide child support is more important than the obligation to fulfill most other obligations." *Id.* This rationale does not apply in the situation where an obligor is indebted to CSED.

3. The record provides support for the conclusion that Robinson inherited the property that he later sold. If on remand the superior court determines that this property was indeed inherited, only the interest from its sale and capital gain, if any, calculated on the property's basis as inherited property, would qualify as income under the guidelines of Rule 90.3. *See Nass v. Seaton*, 904 P.2d 412, 416 (Alaska 1995) (stating that "the principal amount of gifts and inheritances should not be considered as income for purposes of Rule 90.3."); *see also* Alaska R. Civ. P. 90.3, commentary III.A (stating that "[t]he principal amount of one-time gifts and inheritances should not be considered as income, but interest from the prin-

### D. Consideration of Robinson's Potential Earning Capacity

■ Easton next argues that the superior court should have calculated Robinson's child support obligations based on his potential, rather than his actual, earnings. Her argument has merit.

■ Modification of child support may be unwarranted if an obligor has voluntarily reduced his or her income. *See Vokacek v. Vokacek*, 933 P.2d 544, 549 (Alaska 1997); *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987), *overruled on other grounds by Nass v. Seaton*, 904 P.2d 412, 416 & n. 7 (Alaska 1995). This court has suggested that assessing voluntariness is essentially a question of fact. *See Vokacek*, 933 P.2d at 549 (stating that the judge should "consider the nature of the changes and the reasons for the changes, and then [ ] determine whether under all the circumstances a modification is warranted") (citation omitted). A court may find that underemployment was voluntary even if the obligor acted in good faith. *See Kowalski v. Kowalski*, 806 P.2d 1368, 1371 (Alaska 1991).

Easton has a plausible argument that Robinson has voluntarily failed to realize his income potential. Robinson testified at the November 1995 hearing that with mechanic's tools he could increase his income three-fold. As the superior court recognized, Robinson has at all times owned property that he could use as collateral for a loan to buy these tools. His failure to seek a loan could be considered a decision to remain voluntarily underemployed. As a result, the superior court should consider Easton's argument on this issue on remand.

### E. Consideration of the Cost of Living in Unalaska

■ Finally, Easton argues that the superior court should have increased Robin-

son's child support obligations above the Rule 90.3 amount because of the high cost of living in Unalaska. Again, we conclude that her argument may have merit.

Easton submitted evidence to the superior court that the cost of living in Unalaska is substantially higher than the cost of living in Anchorage. Rule 90.3 permits superior courts to vary the amount of child support otherwise required by the rule in order to avoid "manifest injustice" and lists "extraordinary expenses" as a circumstance justifying variation. Alaska R. Civ. P. 90.3(c)(1). It therefore would have been within the superior court's discretion to increase Robinson's child support obligations because of the high cost of living in Unalaska. *See Gross v. Gross*, 355 N.W.2d 4, 8 (S.D.1984) (stating that the trial court should consider the increase in a mother's living expenses occasioned by moving from Hand County, South Dakota to Tacoma, Washington in deciding whether to modify a child support award).

■ Furthermore, Robinson claims that he agreed in the first instance to pay more than Rule 90.3 required of him because he recognized the additional expenses his family incurred by living in Unalaska. We have recently decided that in ruling on child support modification motions, superior courts should respect the intentions of parties who contract for child support payments in excess of Rule 90.3's requirements. *See Flannery v. Flannery*, 950 P.2d 126, 132 (Alaska 1997).[4] As a result, in setting Robinson's new child support obligations, the superior court should consider his initial promise to make payments that reflected the higher cost of living in Unalaska.

### IV. CONCLUSION

We REMAND to the superior court for findings. In explaining the rationale for its

---

cipal amount should be considered as income...."). If the property is not inherited, only capital gain from its sale and the interest portion of the payments should be considered income to Robinson for purposes of Rule 90.3. *See* Alaska R. Civ. P. 90.3, commentary III.A.16; *see also Eagley v. Eagley*, 849 P.2d 777, 779 (Alaska 1993) (stating that although this court has not officially adopted the commentary, we have relied on it for guidance in determining adjusted annual income).

4. Indeed, the superior court may want to consider the effect of *Flannery* on other aspects of its decision to modify Robinson's child support obligations given *Flannery*'s holding that Rule 90.3's guidelines do not necessarily apply when a parent seeks to modify a child support agreement in which he or she promised to pay more than would be required by the rule. *See Flannery v. Flannery*, 950 P.2d 126, 134 (Alaska 1997).

decision on remand, the superior court should address the three arguments that Easton raised below and on appeal.