NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DARON D. MASON SR., | ) | |
| | ) | Supreme Court No. S-18349 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-18-09704 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| TOCCARA LEWIS, f/k/a Tocarra | ) | AND JUDGMENT* |
| Johnson and Tocarra McDowell, | ) | |
| | ) | No. 1972 – June 21, 2023 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: DaRon D. Mason, Sr., pro se, Kissimmee, Florida, Appellant. D. Patrick Phillip, Carlson Law Group, LLC, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.   INTRODUCTION

The superior court, following an evidentiary hearing, issued a child support order based largely on a finding that the father, the obligor parent, had over the preceding six years earned regular income from buying and selling residential properties. The father contends this was error; he argues that the real estate transactions

---

\*       Entered under Alaska Appellate Rule 214.

were simple home sales made necessary by family moves from state to state, and any gains from them were incidental. He also asserts that the superior court erred in some of the numbers it used when calculating his capital gains and in the application of the capital gains tax.

We conclude that the superior court did not clearly err in deciding that the father's real estate gains were income for child support purposes, and we affirm that aspect of the court's order. However, we remand due to a few numerical and calculation errors the court should reconsider.

## II. FACTS AND PROCEEDINGS

### A. Facts

DaRon D. Mason, Sr. and Toccara Lewis are the unmarried parents of a 12-year-old son. The parties agree that Mason owes child support as of February 15, 2021, but they disagree on the amount.

The superior court held an evidentiary hearing on the issue in May 2021. Mason testified that he was unemployed, supported himself with his savings, and last held a job in January 2020 as a retail worker at Lowe's, working 20 hours a week at $15 an hour. He explained that he purchased his current home in Florida, where he lives with his youngest son, with cash just before leaving his job at Lowe's. He claimed to be looking for more part-time work, though not actively. At several points during Mason's testimony the judge urged him to submit whatever documentation, including tax returns, he might have to support his income-related arguments, reminding both parties that he could only "make the best decisions . . . based on the information in front of [him]."

Lewis testified that she believed Mason owned two homes in Florida. She believed he lived in one of them and in the other was "doing what he's been doing the past couple years, which is buying a property and then fixing it up and selling it for

profit." She predicted that Mason's tax returns would reveal real estate sales as his main source of income, given that "[h]e does not have any wages income."

Mason then called the court's attention to a 2018 child support order in a case involving his other son; he asserted that Lewis and the other's son's mother were "working in cahoots" to claim, falsely, that he was making money as "a fixer-flipper." He testified that any money he made on property sales was simply the unavoidable consequence of his moves from state to state. When the court asked him to address the fact that he currently owned two houses in Florida, Mason explained that he had purchased the second about a year earlier for $170,000 in cash. He said it was a "family house" for hosting family and friends, and he planned to eventually pass it on to his younger son. The court ordered him to "produce, file, and serve[] documents as to the purchase of that house."

At the end of the hearing the court ordered both parties to submit their complete 2019 and 2020 tax returns. Lewis complied; Mason submitted a complete 2020 return but a partial 2019 return. The court followed up with an order in August requiring Mason to file "at least the following" information for the period January 1, 2019 to August 10, 2021:

> a notarized affidavit . . . that clearly states how he supports himself and his family; a list of all jobs he has held for [that] period; a list of any jobs he has applied for but not received during this period; his complete 2019 and 2020 tax returns, including all schedules; all real estate settlement statements of all properties he has bought and/or sold during this period; for this same period, copies of any lease agreements for any real property he is or has either lived in or rented to anyone; and, any other documents he cares to submit.

In response, Mason provided a letter confirming his receipt of veteran's benefits, a settlement statement and closing disclosure for the sale of one property in Anchorage, and an audit of the child support he received from the mother of his other son. In the

court's view, however, Mason "largely failed to provide the explanations and/or evidence [the] court requested."

In December the superior court entered a final child support order in which it calculated Mason's child support obligation to be $1,106.77 per month. To arrive at this figure, the court used the information in the case file to create a spreadsheet that "shows the various houses that Mr. Mason has purchased/sold, and the gain/loss on each." The spreadsheet showed that Mason purchased seven houses between 2006 and 2020 and sold five between 2016 and 2019; he still owned two. The properties' locations and their years of purchase and sale are as follows:

| Location | Purchase Year | Sale Year |
| --- | --- | --- |
| West 45th Ave., Anchorage | 2006 | 2016 |
| North Klevin St., Anchorage | 2011 | 2016 |
| North Park St., Anchorage | 2016 | 2018 |
| Mast Circle, Anchorage | 2018 | 2019 |
| Nine Mile Rd., Oak Park, MI | 2012 | 2019 |
| Brewster Dr., Kissimmee, FL | 2019 | |
| Chapman Oak Ct., Kissimmee, FL | 2020 | |

The court calculated the average gain per year from Mason's property transactions, subtracted an estimated capital gains tax, and added Mason's yearly veteran's disability benefit. The result was a total adjusted annual income of $61,006.42. From this the court concluded that Mason owed Lewis $1,106.77 per month in child support beginning March 1, 2021.

Mason filed three motions for reconsideration. To the first motion he attached a copy of the 2018 child support order from the case involving his other child; the order included a finding that Mason's capital gains from the sales of the 45th Avenue and Klevin Street properties were "not a regular source of income." To the

second motion Mason attached his 2016-18 tax returns, the settlement statement for the Oak Park property, the settlement statement and disclosures for the Mast Circle property, and closing statements for the 45th Avenue, North Park, and Klevin Street properties. The superior court denied both of these motions for reconsideration on grounds that, among other things, they impermissibly attempted to introduce new evidence.

Mason then filed his third motion for reconsideration, which asked the court to "re-review and apply the appropriate mandatory federal tax deduction" and to provide documentary support for its capital gains calculations. The court denied this last motion because it in effect sought reconsideration of the denial of a motion for reconsideration, which "is not permitted by the Alaska Rules of Civil Procedure."

Mason appeals the court's child support order.

## III. STANDARD OF REVIEW

"The superior court has 'broad equitable powers' to fashion a child support award."[1] The "broad definition" of "adjusted annual income" in Alaska Civil Rule 90.3(a)(1) gives the superior court " 'broad discretion' in deciding whether certain funds should be included in income for Civil Rule 90.3 purposes."[2] And generally "a trial court is granted discretion to choose 'the best indicator of . . . future earning capacity.' "[3]

---

[1] *Coghill v. Coghill*, 836 P.2d 921, 924 (Alaska 1992) (quoting *Smith v. Smith*, 673 P.2d 282, 283 (Alaska 1983)).

[2] *Id.* at 926 (quoting *Bergstrom v. Lindback*, 779 P.2d 1235, 1237 (Alaska 1989)).

[3] *Ward v. Urling*, 167 P.3d 48, 55 (Alaska 2007) (alteration in original) (quoting *Virgin v. Virgin*, 990 P.2d 1040, 1049 (Alaska 1999)).

"We review factual findings regarding a party's income when awarding child support for clear error."[4]  Under this standard, we will reverse the trial court's conclusion only if "review of the entire record leaves us 'with a definite and firm conviction that a mistake has been made.' "[5]  "We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[6]

Whether something "qualifies as income for the purposes of Rule 90.3 is a question of law that we review de novo, adopting the rule that 'is most persuasive in light of precedent, reason, and policy.' "[7]  "Whether the superior court used the correct method of calculating child support and whether it applied the correct legal standard in calculating child support pose[] questions of law we review de novo."[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Make Legal Or Factual Errors In Determining That Mason's Capital Gains From Property Sales Constituted Income.

Under Rule 90.3 "[a] child support award in a case in which one parent is awarded primary physical custody" is calculated based on "the adjusted annual income

---

[4]     *Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013).

[5]     *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008) (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)), *overruled on other grounds by Geldermann v. Geldermann*, 428 P.3d 477, 486 (Alaska 2018).

[6]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[7]     *Fredrickson v. Button*, 426 P.3d 1047, 1052 (Alaska 2018) (quoting *Robinson v. Robinson*, 961 P.2d 1000, 1002 (Alaska 1998)).

[8]     *Id.*

of the non-custodial parent . . . .  Adjusted annual income as used in this rule means the parent's total income from all sources" less certain allowable deductions.[9]

The Rule's official commentary provides that the phrase " 'parent's total income from all sources' . . . should be interpreted broadly to include benefits which would have been available for support if the family had remained intact."[10]  In this context, income "includes, but is not limited to," "capital gains in real and personal property transactions *to the extent that they represent a regular source of income*."[11] The commentary recognizes that because child support calculations are based on expected future income, they "will necessarily be somewhat speculative."[12]  And "[t]he determination of future income may be especially difficult when the obligor has had very erratic income in the past.  In such a situation, the court may choose to average the obligor's past income over several years."[13]

Mason argues that it was error to use capital gains from his sales of real property to calculate his income when the gains were from the non-taxable sales of personal residences.[14]  According to Mason, these gains cannot represent a "regular source of income" because they were realized simply as a function of family moves

---

[9] Alaska R. Civ. P. 90.3(a)(1).

[10] Alaska R. Civ. P. 90.3 cmt. III.A (quoting Alaska R. Civ. P. 90.3(a)(1)).

[11] *Id.* (emphasis added).

[12] Alaska R. Civ. P. 90.3 cmt. III.E.

[13] *Id.*

[14] Both parties and the superior court refer to the calculation of Mason's income as "imputing" income to him.  In calculating child support a court may impute income "based upon the parent's work history, qualifications, and job opportunities" when the parent is "voluntarily and unreasonably . . . unemployed or underemployed." Alaska R. Civ. P. 90.3(a)(4).  But "imputing income" is a slight mischaracterization of what was done here:  the court used Mason's past earnings history to predict what his future *actual* income was likely to be, not what he *would* earn if he were working to capacity.

from state to state and the fact that the homes had incidentally gained value. As he did in the superior court, Mason maintains on appeal that since 2019 he has purchased his homes with "old money" he saved by living "below his means." As for the gains from pre-2019 sales, Mason characterizes them as a windfall rather than evidence of a practice, pointing out that they were determined not to be income by the court issuing the 2018 child support order involving his other child. Finally, he argues that a better indicator of his future earning capacity is his history as a part-time retail employee.

But the superior court reasonably concluded otherwise based on the evidence before it. Lewis provided documentation related to the Oak Park, Kissimmee, and three Anchorage properties in support of her argument that Mason was making money by "flipping" houses. He failed to timely provide any counter evidence, including any that would help explain the source of the cash he used not only to purchase these properties but also to support himself and his family. Quoting in part from an earlier order, the court clearly explained how the lack of evidence affected its decision-making:

> "Mr. Mason had submitted an affidavit stating that his income in 2019 was $105, and $0 in 2020, his 2019 tax return shows that he received a capital gain of $71,672. As to his 2020 tax return, that shows he made $0 and that [he] is 'self-employed,' yet it appears that he bought a house in March 2020 for about $170,000 cash. He states that his 'present family homes were purchased with old money earned in the past.' He does not explain what this means. Nor does he explain what he does as 'self-employed'; how many homes he has bought/sold in the 'past'; where his 'old money' comes from; how he pays for his everyday essentials; or, any other meaningful explanations. Parts of his 2019 tax return were also missing from what he filed. Simply stated, neither his tax returns nor his explanations to date seem to accurately reflect his income, expenses, or how he supports himself or his family." Mr. Mason provided a little more information in [a later] filing, but he has largely

failed to provide the explanations and/or evidence this court requested.

"[W]e have repeatedly recognized that parties who fail to present sufficient evidence to the court cannot later object on the basis of inadequate evidence."[15] The court did not err by calculating Mason's past income based on the information it had.

We reach this conclusion despite the 2018 child support order from the case involving Mason's other child. Mason correctly points out that that order determined that the capital gains reported in his 2016 tax returns — from the sales of the West 45th and Klevin Street houses — did not represent "a regular source of income." But at the time of the 2018 order, Mason had not yet sold the Mast Circle or Oak Park properties, nor had he yet purchased the two houses in Florida — where at the time of the hearing in this case he was working on one house while living in the other. In light of these intervening events, real estate transactions that did not generate a "regular source of income" in the eyes of one judge in 2018 could reasonably be viewed differently by another judge three years later.

Finally, Mason argues that "[i]mputing income [to him] should be based on his work history and qualifications," which he contends include only "working retail at Lowes part time." But first, as pointed out above,[16] the superior court did not "impute" income based on what Mason *could* be earning, but rather determined from historical data what Mason *had* made in the past. Mason's reliance on our unpublished

---

[15] *McDonald v. Trihub*, 173 P.3d 416, 426 (Alaska 2007) (affirming superior court's approximation of obligor parent's income based on limited information presented); *see also Byers v. Ovitt*, 133 P.3d 676, 683 (Alaska 2006) (affirming imputation of income based on uncooperative party's estimated expenses); *Benson v. Benson*, 977 P.2d 88, 91-94 (Alaska 1999) (affirming imputation of income based on bank records of uncooperative party).

[16] *See supra* note 14.

opinion in *Taubert v. Mouritsen* is therefore misplaced.[17]  In that case we vacated a child support award because the superior court "focused on speculative evidence of what [the obligor] might be able to earn" rather than "historical evidence of what she had actually earned."[18]  The superior court in this case, in contrast, calculated Mason's income based on what the court disregarded in *Taubert*:  historical evidence of his past earnings.

In considering the historical evidence, the superior court did not err by looking beyond Mason's earnings as a part-time retail employee; its task was to ensure that the number it selected as his "total income from all sources" included "benefits which would have been available for support if the family had remained intact," as the commentary to Rule 90.3 instructs.[19]  The only sources of regular income Mason identifies are his veteran's disability benefits, child support from the mother of his other son, and his income from the part-time job he left over three years ago.  The superior court could reasonably conclude that Mason was relying on other income sources — i.e., his home sales — to support his family's needs from year to year.[20]  Therefore, the court did not clearly err when it found that Mason's capital gains from the sale of real property were a "regular source" of his income.  Based on this finding, it was not error to treat these funds as income for purposes of Rule 90.3.

---

**17**    No. S-17621, 2021 WL 2137769 (Alaska May 26, 2021).

**18**    *Id.* at *2.

**19**    Alaska R. Civ. P. 90.3 cmt. III.A.

**20**    Mason explains that after he sold both his Michigan residence and his Alaska Mast Circle residence in 2019, he used the money from those sales, plus "money remaining from the capital gains earned in 2016 and 2018," to buy his two Florida houses.  This explanation does not challenge the superior court's conclusion that his total income included the gains from home sales; it supports that conclusion instead.

**B.** **The Superior Court's Findings Are Nonetheless Inadequate For Rational Appellate Review In A Few Respects.**

"A trial court has a duty to enter findings adequate for rational appellate review when it sets a child support obligation."[21] "[I]t is incumbent upon the trial court to enter sufficiently detailed findings of fact which disclose its methodology, *as well as the factual basis*, for its determination of the appropriate imputed potential income level for the obligor-parent."[22]

Mason argues that the spreadsheet the superior court relied on in calculating his adjusted gross income is missing some sales and purchase figures and misstates others. First, he argues that the court erred by including sales as far back as 2016 when it only requested information from 2019 forward. But the court did express confusion over the source of Mason's claimed "old money," and it urged him to submit any documents that would support his position that this "old money" funded his family's day-to-day existence. Furthermore, at the time of the court's request, Lewis had already submitted documents related to Mason's older real estate transactions. He was on notice that the court could consider earlier gains in calculating his historic income.

Second, Mason argues that the court erred by failing to factor in the purchase price of the Oak Park property, which the spreadsheet lists as "unk[nown]." But as Lewis correctly observes, she "provided what information she had on Mason's property income and, because Mason chose not to refute it with his own evidence, the court was within its discretion to derive its spreadsheet figures from Ms. Lewis' information presented to the court."

---

[21] *O'Connell v. Christenson*, 75 P.3d 1037, 1040 (Alaska 2003).

[22] *Nass v. Seaton*, 904 P.2d 412, 419 (Alaska 1995) (emphasis added).

But a few issues with the spreadsheet's numbers prevent our rational review. First, the spreadsheet shows a capital gain of $345,000.00 from the 2016 sales of the West 45th and North Klevin properties combined. But Mason's 2016 tax return, submitted with one of his motions for reconsideration, reports the gain from the sale of these two properties as $324,927, which is the number cited in the 2018 child support order involving Mason's other child. While the spreadsheet's number may be a reasonable estimate, we cannot tell what it is based on.

Second, we are unable to find support for what the spreadsheet shows as the capital gain from the 2016 sale of the North Park house. Lewis provided a Zillow listing for the property showing an estimated value of $258,132. But the spreadsheet states a purchase price of $344,000 and a sale price of $529,000, for a capital gain of $185,000. Again, we are unable to find the source of these numbers in the record, which prevents us from determining whether they are firmly grounded in the evidence. On remand the superior court should revisit the combined capital gains for the West 45th and North Klevin properties and the capital gains for the North Park house.

**C.    The Superior Court's Methodology For Calculating Mason's Capital Gains Tax Was Not An Abuse Of Discretion, But We Remand For Reconsideration Of The Tax's Application To Two Properties Not Yet Sold.**

The superior court applied a capital gains tax rate of approximately 15% to the average gain per year it calculated from Mason's real estate transactions. Mason argues that the court should instead have applied this tax rate to the gain from each year separately before then adding up these tax-reduced gains, and only then calculating the average gain per year. Mason's proposed methodology results in a net average yearly gain of approximately $25,000 less than that calculated by the superior court.

Rule 90.3(a)(1)(A)(i) states that mandatory deductions such as federal, state, and local income tax should be deducted from the obligor parent's total income when calculating the parent's adjusted annual income for the purposes of calculating a

child support award.  The commentary to the rule states:  "The parent claiming a deduction must provide evidence to support it."[23]

As Lewis observes, Mason "does not point to any legal authority explaining how exactly the trial court should have calculated capital gains in this case." Mason also did not provide any evidence, such as evidence of the actual tax paid, that could have led the superior court to a different calculation.  Again, the court did what it could with the information it had, and it did not abuse its discretion when it calculated the deduction in the face of a lack of evidence or a prescribed formula for calculating capital gains tax in cases such as this.[24]

Despite finding no error in the superior court's methodology, we direct the court on remand to reconsider how it is applied.  The court included the purchase prices of the two Florida properties as losses when adding up the money Mason had made from real estate sales over the preceding six years; it divided that balance by six to reach an average gain per year, then subtracted capital gains tax from that yearly average to reach a net average yearly gain.  We question whether the capital gains tax was properly applied to a number that is based in part on the purchase price of unsold properties; Mason could not have been taxed on gains not yet realized.  The court on remand should reconsider how the two Florida properties are relevant to its calculation of the applicable capital gains tax.

V.     **CONCLUSION**

The child support order is REMANDED for reconsideration of the capital gains from the 2016 sales of the West 45th, North Klevin, and North Park houses and

---

[23]     Alaska R. Civ. P. 90.3 cmt. III.D.

[24]     We note that the superior court was not required to deduct a capital gains tax at all, given that the commentary to Rule 90.3 states that the party "claiming a deduction must provide evidence to support it," and Mason provided no such evidence. *Id.*

whether the purchase prices of the Florida properties were appropriately included in the gain/loss balance for purposes of calculating the capital gains tax. The order is otherwise AFFIRMED.