Barbara SHEPHERD, Appellant,

v.

George HARALOVICH, Appellee.

No. S–11692.

Supreme Court of Alaska.

Oct. 26, 2007.

James E. Curtain, Juneau, and Vance A. Sanders, Law Office of Vance A. Sanders, LLC, Juneau, for Appellant.

George J. Haralovich, pro se, Juneau.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

Alleging that her income had declined following her divorce from George Haralovich, Barbara Shepherd asked the superior court to recalculate child support. Shepherd's income had declined in part because she had sold rent-producing property that she had been awarded in the divorce. The superior court found that Shepherd's income was effectively the same as before. When Shepherd moved for reconsideration, the trial court considered that income Shepherd could realize from reinvesting net proceeds from the rental property sale would compensate for the small decline in her net income and denied reconsideration. Shepherd appeals the denial of her reconsideration motion and, among other things, argues that because she was not voluntarily underemployed, it was error to impute any income to her. We affirm the court's imputation of investment income because imputation does not require underemployment. But we remand the matter to the superior court to determine Shepherd's federal tax liability and recalculate her adjusted annual income to account for that tax liability.

## II. FACTS AND PROCEEDINGS

Barbara Shepherd and George Haralovich divorced in 2002 after a marriage of seventeen years. Shepherd was awarded primary physical custody of the parties' three children. The divorce decree set Haralovich's base child support obligation at $1,654 per month. As part of the divorce, Shepherd received the family home and also received a rental property estimated in 2002 to be worth $235,000. The rental property carried two mortgages totaling about $110,000. Shepherd sold the rental property for $265,000 in 2003.

In July 2003 the oldest child moved away from home. In December the court issued a new custody order for the two children still at home which set out a week on/week off schedule. In April 2004 the superior court issued a new child support order ending Haralovich's child support obligation for the oldest child and also changing the custody arrangement for the two remaining children. Child support was based on one child living week on/week off with both parents, while the other child resided primarily with Shepherd.

The April 2004 order also noted that Shepherd's January 2004 child support affidavit reflected less income than her 2002 affidavit, partly because she did not list any rental income in 2004. Shepherd's 2002 affidavit had listed her gross income as including $50,000 in wages, $21,288 in rental income, and $2,050 from other sources. The April 2004 order stated that the court would rely on Shepherd's 2002 affidavit in calculating income to compute child support unless Shepherd submitted supplemental information, including "her full 2003 federal tax return," that explained her decreased income. Based on Shepherd's 2002 affidavit, in April 2004 the superior court determined that Shepherd's net income was $51,639 after allowable deductions.

In response to the April 2004 order, Shepherd submitted an affidavit explaining that she had sold the rental property and declaring that "my income from rentals has gone from $21,288 to zero." She did not submit a tax return or equivalent documents.

In July 2004 the superior court issued another order regarding child support. The court used a January 2004 pay stub to estimate Shepherd's net income at $44,126; this was $7,513 less than the amount set out in the April order. The $44,126 figure did not include any income from rental property or any investment income from funds generated by the sale of the rental property. The superior court declared that "[w]hile Ms. Shepherd indicates that she sold her income-producing property, the court assumes that she could have continued to receive that income and/or that she re-invested those funds in such a way that is as or more financially advantageous as was previously the case." The superior court in its July order thus seemed to impute $7,513 in investment income to Shepherd. The court indicated that in calculating child support it would use an adjusted annual income figure of $51,639 for Shepherd. The superior court noted that Shepherd had still not submitted her 2003 federal tax return "and all attachments" or any "explanation under oath as to the amount and disposition of the proceeds of the income-producing property." The court announced that barring a request for reconsideration and submission of that information, it would issue a support order based on the prior calculation.

Shepherd then moved for reconsideration and submitted her affidavit attaching her 2002 and 2003 federal tax returns. Her 2003 tax return reflected a taxable wage income of $44,421 and a $95,393 capital gain from the sale of the rental property. She stated in her affidavit that the rental property "was not producing enough income to justify [her]

holding it long-term." She also stated that the sale was made necessary by a poor financial position partially caused by Haralovich's failure to pay child support. She asserted that she did not re-invest any proceeds of the sale in a way that would provide her a regular income.

In September 2004 the superior court issued a third order, addressing Shepherd's reconsideration motion. Based on the financial information newly submitted by Shepherd with her reconsideration motion, the superior court calculated her adjusted net annual income at $50,730. The superior court noted that this figure was only $909 less than the net income of $51,639 it had used in the two prior orders. The superior court denied Shepherd's motion for reconsideration; it reasoned that although her annual wages were $909 less than the court had previously assumed (excluding the $95,000 capital gain[1]), "it is reasonable to assume that at least some portion" of the proceeds of the sale of the rental property would be invested "in such a way as to net at least $909 per year." The superior court therefore concluded that "[t]he $51,639 net annual income" listed in Shepherd's 2002 Civil Rule 90.3 affidavit "appears to be at least that income that best reflects [Shepherd's] current income and/or income producing ability."

Shepherd appeals from the September order denying her reconsideration motion.

## III. STANDARD OF REVIEW

▆▆▆▆ We review a trial court's denial of a motion for reconsideration for abuse of discretion.[2] "We review decisions to impute income for abuse of discretion."[3] Whether a trial court has abused its discretion depends on whether "we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its rul-

---

1. Alaska Civil Rule 90.3, Commentary III A(16) suggests capital gains should be treated as income only "to the extent they represent a regular source of income."

2. *Neal & Co., Inc. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995).

3. *O'Connell v. Christenson*, 75 P.3d 1037, 1039 (Alaska 2003) (citing *Rhodes v. Rhodes*, 754 P.2d 1333, 1335 (Alaska 1988)).

ing."[4] But "[w]hether the trial court used the correct method of calculating child support is a matter of law, therefore we give no deference to the trial court's decision."[5] We apply our "independent judgment when reviewing a lower court's interpretation of statutes and other related legal questions."[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Considering the Income–Producing Capability of Funds from the Sale of the Rental Property.

■■■ Shepherd argues that the superior court erred by imputing income to her and that "income may only be imputed to 'a parent who voluntarily and unreasonably is unemployed or underemployed.'"[7] Shepherd argues that "as a matter of law the trial court must make a determination of voluntary and unreasonable unemployment or underemployment" before imputing income.

We first observe that there is some question whether the superior court's final order denying reconsideration, issued in September, actually imputed any income to Shepherd. This uncertainty may stem from the three orders issued by the superior court. The April order imputed no income to Shepherd and was based on Shepherd's earlier statement that she had received approximately $21,000 in rental income. The July order may have imputed income of about $7,500 to Shepherd, but that order was superseded by the September order issued after Shepherd moved for reconsideration. Shepherd appeals the September order denying reconsideration.

In its April 2004 order, the superior court relied on Shepherd's 2002 child support affidavit and provided that child support would be based on her net income of $51,639. The superior court denied reconsideration in its September order because it found that Shepherd's financial information indicated her current income was $50,730. Therefore, the superior court's final order imputed, at most, $909 of investment income to Shepherd, the difference between $50,730 and the $51,639 referred to in the April 2004 order.

It is probable, however, that the superior court's consideration of potential investment income is not an imputation at all. If imputation is appropriate, a court typically finds the specific income to be imputed to the parent and uses this figure to calculate child support.[8] The superior court here simply looked to the earning power of "at least some portion" of the proceeds from the rental property sale, and assumed they would "net at least $909 per year," in order to confirm that there was no significant difference between the income figure the court had used in its July order and the income figure described in Shepherd's reconsideration motion.

This was an appropriate way for the superior court to decide whether to grant Shepherd's motion for reconsideration. There was a difference of only $909 between the prior net income figure and the net income figure revealed in Shepherd's reconsideration affidavit. Shepherd's 2003 tax return listed the gross sales price of the rental property as $265,000. Given that the court had previously been informed that there were existing mortgages of approximately $110,000 on the property, it was reasonable to think that some net proceeds from the sale of the property could have been safely reinvested and that the investment income would more than compensate for the relatively small difference in net income.

The superior court therefore did not abuse its discretion in concluding in September that the $51,639 net income figure the court used in the April and July orders to calculate child

**4.** *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982).

**5.** *Turinsky v. Long,* 910 P.2d 590, 594 n. 10 (Alaska 1996) (citing *Charlesworth v. State, Child Support Enforcement Div.,* 779 P.2d 792, 793 (Alaska 1989)).

**6.** *Paxton v. Gavlak,* 100 P.3d 7, 10 (Alaska 2004).

**7.** Quoting Alaska Civil Rule 90.3, Commentary III(C).

**8.** *See, e.g., O'Connell,* 75 P.3d at 1038 (explaining that superior court imputed income of $43,550.13 to O'Connell and then calculated his support obligation based on this amount).

support "reflects [her] current income and/or income producing ability." The court did not use the net of the sale proceeds to impute income. In deciding the reconsideration motion, the court instead appears to have relied on the net proceeds only to conduct a reality check to determine whether there was a significant difference between Shepherd's income as previously determined in April and her income as represented in her motion for reconsideration, and thus to determine whether Shepherd's Civil Rule 77 reconsideration motion should be granted.

In any event, it would not have been an abuse of discretion to impute some investment income to Shepherd from the sale proceeds of the rental property. Her primary argument, that investment income can "only be imputed to a parent who voluntarily and unreasonably is unemployed or underemployed," misreads Alaska Civil Rule 90.3.

Alaska Civil Rule 90.3(a)(4) states:

The court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed.... Potential income will be based upon the parent's work history, qualifications, and job opportunities. The court *also* may impute potential income for non-income or low income producing assets.

(Emphasis added.) "Also" indicates that imputing income from underproducing assets differs from imputation based on underemployment. In effect, Rule 90.3(a)(4) provides that a court may impute employment income when there is unreasonable underemployment and may impute investment income when there is a non-income or low-income producing asset. The rule does not expressly or implicitly condition imputation of invest-

ment income on unemployment or underemployment.

Shepherd cites several cases discussing the unemployment or underemployment of parents [9] and asserts that "[t]he unifying theme in these opinions is ... that income may only be imputed to 'a parent who voluntarily and unreasonably is unemployed or underemployed.'" [10] These cases are not on point because they only discuss employment income and do not discuss underperforming assets. Shepherd cites nothing to suggest that the "voluntarily and unreasonably ... underemployed" finding that Rule 90.3 requires before imputing employment income is also required if income is to be imputed from underperforming assets.

■ Moreover, our decisions indicate that it is not necessary to find underemployment before imputing asset income. In *Laybourn v. Powell,* we held that "the superior court properly imputed income to Laybourn based on his efforts to disguise actual earnings and conceal assets," even though there was no finding that he was underemployed or unemployed.[11] We noted that underreporting income or hiding assets is "functionally equivalent to voluntary underemployment." [12] We did not discuss whether a finding of deliberate underemployment is necessary for imputation of income from assets (and presumably the parties had not argued this), but we had no difficulty affirming an imputation of income to someone who was fully employed but hiding assets.

In *Ogard v. Ogard,* we noted that "where an obligor parent has reduced his or her income by liquidating income-producing assets and applying the proceeds to the mortgage on his or her dwelling," a trial court

**9.** Shepherd's brief cites: *Nunley v. State, Dep't of Revenue, Child Support Enforcement Div.,* 99 P.3d 7 (Alaska 2004); *Olmstead v. Ziegler,* 42 P.3d 1102 (Alaska 2002); *Robinson v. Robinson,* 961 P.2d 1000 (Alaska 1998); *Vokacek v. Vokacek,* 933 P.2d 544 (Alaska 1997); *Kowalski v. Kowalski,* 806 P.2d 1368 (Alaska 1991); and *Pattee v. Pattee,* 744 P.2d 658 (Alaska 1987). *Pattee* is the only one of these cases to mention sale of assets, but *Pattee* did not involve imputation of asset income, and it was decided under the framework existing before Rule 90.3, which was adopted by

Supreme Court Order No. 833 (April 30, 1987), and became effective in August 1987. *See Pattee,* 744 P.2d at 662.

**10.** Quoting Alaska Civil Rule 90.3, Commentary III(C).

**11.** *Laybourn v. Powell,* 55 P.3d 745, 746 (Alaska 2002).

**12.** *Id.* at 747.

might have good cause to impute earnings.[13] The American Law Institute (ALI) recommends imputation of asset income without regard to whether the parent is underemployed. The Institute's *Principles of the Law of Family Dissolution: Analysis and Recommendations* states that "[i]n calculating a parent's income, the court may ... (b) impute an ordinary rate of return to an asset that yields less than an ordinary rate of return." [14] The ALI further explains that a "court should impute an ordinary rate of return" on a stock portfolio producing little or no income even for someone who is employed and "earns a substantial salary." [15]

Given Rule 90.3(a)(4)'s statement that "[t]he court also may impute potential income for ... low income producing assets" and our precedents, it would not have been error to impute investment income to Shepherd without first finding deliberate underemployment.

■ Shepherd also briefly argues that investment income should not be imputed because she did not unreasonably and voluntarily forgo income-producing assets. She contends that selling the rental property was reasonable and that "given her then-extant economic circumstances, it would be difficult to conclude that selling the property was actually voluntary." The voluntary and unreasonable requirements set out in Rule 90.3 for imputation expressly apply only to unemployment and underemployment.[16] Thus, in *Ogard*, we noted that the trial court could impute earnings if a parent sold income-producing assets in order to reduce mortgage payments.[17] Such a reinvestment would not be unreasonable, but selling one investment to offset liabilities would presumably improve the parent's financial situation, and it is not obvious why it would be reasonable to decrease that parent's share of child support based on the "loss" of the asset. Also, the issue is not whether it was unreasonable for Shepherd to sell the property. It is whether, having sold the property, Shepherd could fail to use any of the net sales proceeds to generate income. Shepherd has not squarely disputed that issue. She did not demonstrate below that the sales proceeds were exhausted or that the superior court erred in stating that "it is reasonable to assume that at least some portion of this money will be invested in such a way as to net at least $909 per year." Given the evidence before the court on reconsideration, the court could reason that it would have been unreasonable to use none of the sales proceeds to generate some nominal replacement income.

Shepherd argues in the alternative that even if the superior court did not err by imputing some investment income, it erred in determining the amount of Shepherd's adjusted income for child support purposes. Shepherd asserts that the net rental income of approximately $21,000 would have been reduced by the cost of a "handyperson" because she could not have performed building maintenance herself. She also asserts that the $21,000 figure she listed for 2002 was wrong because it was for "all" of the parties' rental properties, not just the rental property awarded to her. Hence "[t]o impute future income from property Ms. Shepherd did not then own is simply unsupported by case law, this record, or common sense." Third, she asserts that the rental income should have been averaged over a two- or three-year period. These three contentions are all based on her assumption that the superior court imputed rental income to Shepherd. But the court did not impute rental income. At most, the superior court imputed income from some portion of the net sale proceeds.

Finally, Shepherd argues that the court erred in considering the proceeds from the sale of the rental property because they re-

---

13. *Ogard v. Ogard*, 808 P.2d 815, 819 n. 6 (Alaska 1991).

14. AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS § 3.14(4) (2002).

15. *Id.* at § 3.14 cmt. d.

16. "The court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed." Alaska Civil Rule 90.3(a)(4).

17. *Ogard*, 808 P.2d at 819 n. 6.

sulted from a one-time sale and were not regular income. Rule 90.3, Commentary III(A) suggests treating capital gains as income only if they "represent a regular source of income." The superior court did not treat the one-time capital gain as income; the court only considered the net sale proceeds insofar as they could have been reinvested to provide a source of regular income. The commentary to Rule 90.3 III(A) states that "one-time gifts and inheritances should not be considered as income, but interest from the principal amount should be considered as income." By implication, there is nothing wrong with treating investment income from a one-time capital gain as income.

### B. It Was Error To Calculate Child Support Based on the Assumption that Shepherd Would Have No Federal Income Tax Liability.

In calculating allowable deductions for child support determination purposes, the superior court assumed that Shepherd would pay no federal income taxes on her income. The superior court noted in its September order:

> In 2002, Ms. Shepherd owed no federal income taxes. In 2003, she owed $14,335 in federal income taxes. However, these high taxes are tied to her sale of the rental property and receipt of $95,393 in capital gains.... Since her actual tax liability for 2002 was zero, that number (zero) appears to most closely approximate actual projected federal income tax liability.

A threshold question is whether the correctness of the trial court's assumption in calculating child support that there would be no federal income tax liability has been raised and argued sufficiently so as to be properly before us on appeal. In her brief, Shepherd raises the question whether the record supports the trial court's calculation of imputed income and points out that she sought reconsideration of the trial court's decision, submitting both her 2002 and 2003 income tax returns and attachments from both returns. And in her statement of the case, Shepherd contends that she explained to the trial court "that she did not have tax liability for 2002 because that year she in-

curred significant legal expenses in relation to properties at issue in the divorce. She indicated that the legal expenses were deductible for federal tax purposes in tax year 2002 only. No one challenged this valid deduction." Shepherd further maintains in her brief that she informed the trial court that she "used the proceeds from the sale [of the rental property] to pay $14,335 in federal taxes for 2003." Shepherd then points out that "[t]he trial court failed to mention or discuss *why* Ms. Shepherd did not incur income tax liability for 2002: the one-time expense of legal services related to the preservation of her income-producing property. Instead, it used the aberration of property sale-related taxes in 2003 to justify no tax liability or deductions in 2004."

Shepherd further maintains in her brief that "[t]he trial court also rejected the use of standard deductions since Ms. Shepherd itemizes deductions and has three exemptions for income tax purposes. The court believed that since Ms. Shepherd's tax liability for 2002 was zero, that amount should be used as it 'appears to most closely approximate actual projected federal income liability.'" "Based on this flawed analysis," Shepherd complains, "the trial court concluded that 'the $51,639 net annual income Ms. Shepherd represented as adjusted net income in her 2002 ARCP 90.3 affidavit appears to be at least that income that best reflects current income and/or income producing ability' and thus denied Ms. Shepherd's motion for reconsideration." Although these arguments are made under the heading of "statement of the case," rather than in the argument section of Shepherd's brief, we conclude that they are adequate to raise the claim on appeal.

But Shepherd also argues two major legal points in the argument section of her brief: (1) that the trial court erred in imputing rental income, and (2) that, even if income could be imputed, the record failed to support the court's calculation of the amount of her imputed income. In addressing the second point, her alternative claim of computational error, Shepherd specifically argues:

> [S]hould the court be otherwise inclined to impute non-existent net rental income, it

should average that income. As demonstrated by Ms. Shepherd's 2002 and 2003 federal tax returns, rental income from the Grant Street property varied from $8,904 (in 2002) to 0 in 2003, for a two-year annual average of $4,452. Since the property was sold in 2003, though, Ms. Shepherd will receive no rental proceeds from it in 2004, or hereafter and a three year average would yield an average annual rental income of $2,968.

This argument squarely addresses the computational flaw that Shepherd describes in her statement of facts: the superior court's failure to recognize that Shepherd's 2002 zero federal tax liability was a one-time event. Shepard's argument for averaging hinges on the validity of her claim that the 2002 tax deduction was non-recurring. While Shepherd's argument does not draw this connection explicitly, the point is implicit, and her minimal treatment of it seems unsurprising given that the reason for the zero tax liability in 2002 has apparently never been questioned.

In responding to a question from this court at oral argument, Shepherd maintained that the superior court's September order was erroneous because the court assumed Shepherd's normal federal income tax liability was zero. For all of these reasons, we conclude that the issue of Shepherd's tax liability is properly before us, and we therefore turn to the merits. Under Civil Rule 90.3(a)(1)(A)(i), federal income tax is to be deducted from a parent's gross income in order to determine the parent's adjusted annual income. We have previously directed that federal income tax liability should be deducted from imputed income.[18] Therefore, we remand this case to the trial court to determine the amount that should be deducted from Shepherd's income. On remand, the trial court may take into account the actual tax liability of Shepherd as reflected in her tax returns.

## V.  CONCLUSION

For the reasons stated above, the superior court's imputation of investment income is AFFIRMED but the case is REMANDED so that the trial court may determine the amount of Shepherd's federal income tax liability and recalculate Shepherd's adjusted annual income to account for that tax liability.

EASTAUGH, Justice, with whom CARPENETI, Justice, joins, dissenting in part.

EASTAUGH, Justice, with whom CARPENETI, Justice, joins, dissenting in part.

The court reasons that the superior court erred in assuming that appellant Shepherd would pay no income taxes.[1] Because such an error could affect the child support award,[2] the court remands for determination of appellant's income tax liability.[3]

I respectfully dissent from the part of the court's opinion that remands for that determination. Appellant's lawyers have not argued any such error on appeal and the pro se appellee has not addressed the topic. The court concludes that appellant Shepherd adequately raised the income tax question on appeal,[4] but in my view, she did not raise the issue at all, either explicitly or implicitly. We should therefore not consider the income tax liability topic, much less grant relief to appellant on this unpreserved issue.

It may seem hypertechnical to require an appellant to argue an issue explicitly. After all, the appellant here probably raised the issue in the superior court, and this court apparently considers the issue to be so clear that its merits can be resolved with only four lines of discussion[5] and without benefit of appellate briefing. But there are good reasons for requiring appellants to argue an issue explicitly, or at least implicitly.

---

**18.** *Rodvik v. Rodvik,* 151 P.3d 338, 351 (Alaska 2006).

**1.** Majority at 649, 650.

**2.** Alaska R. Civ. P. 90.3(a)(1)(A)(i) (providing that income taxes are deductible from gross income).

**3.** Majority at 650.

**4.** Majority at 649–50.

**5.** Majority at 650.

Our appellate rules specify how litigants must present issues and we have applied those standards in treating as waived issues that were not adequately briefed. Thus, Appellate Rule 212(c), labeled "Substantive Requirements," specifies that the appellant's brief "shall contain," among other items, a statement of issues presented for review, a statement of the case describing the procedural history and relevant facts, an argument section, and a "short" conclusion stating the "precise relief sought." Appellate Rule 212(c)(1)(I) provides that the argument section *"shall contain* the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." (Emphasis added.) We do not treat the argument requirement lightly. We have held that "[w]here a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal." [6] Even pro se litigants must adhere to this standard even though we tend to be more expansive in interpreting their arguments. [7]

We adopted Rule 212 not to satisfy an esthetic interest in the cosmetic appearance of briefs, but to make sure that the issues we decide are truly in controversy, that we do not overlook issues the parties have raised, and that we have the benefit of the parties' thoughts about the facts and law bearing on issues we are deciding. Some elemental rigor in describing the issues for decision also helps with the doctrines of law of the case and res judicata.

Due process is the ultimate foundation for the preservation requirement. Ruling against an appellee on an issue the appellant has not raised deprives the appellee of notice and an opportunity to be heard. Doing so can be especially prejudicial to pro se appellees, who lose both the opportunity to decide whether to hire counsel to address the (unraised) issue and the opportunity to address the issue themselves.

There are various reasons why an appellant might not brief a particular issue. An appellant might decide to focus on particularly compelling contentions, and to ignore others. The primary, if not only, theme of Shepherd's appeal is that it was error to impute rental income to Shepherd. Appellant's Brief at 1, 13–14, 15, 16, 21, 22, 23, 24, 25. Counsel could have reasoned that this was a compelling theme, given undisputed evidence that Shepherd had been awarded only one rental property, that she sold in 2003. And evidence she sold only it because appellee failed to pay child support supported her assertion that she did not unreasonably or voluntarily forgo rental income, thus making imputation inappropriate. Appellant's Brief at 19–20, 23–24. There is good reason to think appellant's counsel chose not to argue the tax issue. [8] An appellant might also choose to avoid an issue in order to limit the appellee's responsive arguments and minimize discussion of unflattering evidence or legal propositions, or to limit the issues to be litigated on remand.

Of course, a party might not raise an issue through simple oversight. But even if an appellant's lawyer is negligent in failing to brief a meritorious issue or a pro se appellant fails to discuss an issue, we regard it as unraised. [9] It does not matter why the issue

---

**6.** *Petersen v. Mut. Life Ins. Co. of N.Y.,* 803 P.2d 406, 410 (Alaska 1990) (citations omitted).

**7.** *Peterson v. Ek,* 93 P.3d 458, 464 n. 9 (Alaska 2004) (stating that "[w]e judge a pro se litigant's performance by a less demanding standard"); *Gates v. City of Tenakee Springs,* 822 P.2d 455, 460 (Alaska 1991) (treating as abandoned claims of pro se litigant raised below but only cursorily or not at all on appeal).

**8.** Shepherd's statement of points on appeal, filed when she commenced her appeal, included this appellate contention: "2. The trial court erred in failing to include mandatory deductions from gross income which appellant is entitled to re-

ceive pursuant to Alaska R. Civ. P. 90.3." Had this point been discussed in these terms in appellant's arguments, there is no question she would have preserved it. But because the other two points listed on her statement of points on appeal correspond exactly to the two arguments she does raise in Part VIII of her brief, it appears she intentionally chose not to brief this issue. Comparing the text of the point with the text of her arguments also strongly suggests intentional waiver. *See* note 25 below.

**9.** *Cf. State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980) ("When, in the argument portion of a brief, a major point has been given no more than cursory statement, we will not

is not raised; we do not decide issues not raised by the parties.[10]

This is a particularly unworthy case for considering an unraised issue and using it to grant relief to appellant. Two lawyers co-signed Shepherd's substantial opening and reply briefs, and her oral argument exceeded the usual time allotted. Haralovich, by comparison, filed only an eight-page pro se brief, much of which discusses matters of little relevance to the issues on appeal. He argued for only nine of his allotted fifteen minutes. Here Shepherd had the burden of going forward on appeal and demonstrating both legal error and prejudice. If, as I think, she did not raise the issue, the pro se appellee is being treated unjustly.

Do Shepherd's briefs raise the issue? No. Not explicitly. Not implicitly. And certainly not adequately.

The issue and argument parts of Shepherd's two briefs do not list, describe, or discuss any error in calculating the income tax deduction. It would therefore seem that prolonged review of the appellant's briefs is not needed to confirm that Shepherd has not asked us to reverse on the theory the superior court miscalculated the income tax deduction in awarding child support. If Shepherd were asking us to do so, one would expect the argument part of her brief to clearly and directly assert that the superior court erred by failing to deduct Shepherd's tax liability and by assuming there was zero tax liability, and that reversal is therefore required. This argument can be easily made. It is factually and legally simple. Although she made no such argument on appeal she raised the issue in the superior court. The argument there could have been clearer, but she asserted that it was error to assume Shepherd had no income tax liability. This confirms that her

lawyers, who co-signed her appellate briefs and also represented her in the superior court, knew how to raise the issue when they wanted to.

The court's opinion reviews Shepherd's opening brief at some length and concludes that the issue was raised, at least implicitly.[11] A casual reader unfamiliar with Shepherd's briefs and her actual arguments might assume from the court's description of her opening brief that Shepherd actually argued the issue. Only a reader familiar with that brief would know what part of the brief contains the passages quoted or described by the court.

Considered part-by-part, appellant's opening brief does not brief the remand issue. All of the direct references to the "issue" are found in, and only in, the part of the opening brief discussing the transactional and procedural facts.[12]

Thus, the table of contents of the opening brief lists the argument section's main topic headings as follows: "The trial court erred by imputing any income to Ms. Shepherd, who is neither unemployed nor underemployed.... The record does not support the trial court's calculation of imputed income." Appellant's Brief at ii. Neither heading mentions taxes; both headings refer to imputation of income.

Part V of the brief lists the two issues presented for review as follows:

1. Did the trial court err by imputing income to appellant?

2. If the trial court did not err in imputing income to appellant, did the trial court err in determining the amount of income to impute to appellant?

Appellant's Brief at 1. Both issues focus on the imputation of income. The first asks

---

consider it further. Failure to argue a point constitutes an abandonment of it.").

**10.** *Id.*

**11.** Majority at 649–50. The court refers only to appellant's opening brief. Nothing in appellant's reply brief can be read to raise the issue, although the reply brief does confirm how limited the appellate issues are. Thus, it asserts that "Many of appellee's assertions are simply not

relevant to the matter properly before this Court: Did the trial court erroneously impute non-existent rental income from long-sold property to appellant?" Reply Brief at 1.

**12.** I use the word "issue" advisedly, without implying that the tax question is indeed an "appellate issue." The tax question was an issue in the superior court. It is an issue before this court only because this court says it is, not because the appellant says it is.

whether it was error to impute income to Shepherd; the second asks whether the court erroneously determined the amount of imputed income. Neither issue as set out mentions taxes or tax errors. No stand-alone computational issue is listed; the computational issue listed by Shepherd arises only if the superior court imputed income to Shepherd.

The court correctly notes that Part VI of the brief, setting out the "statement of the case," does discuss the superior court's rulings on the income tax deduction and what the superior court assumed about Shepherd's annual income taxes.[13] That part is fourteen pages long. It also discusses many other transactional and procedural facts. Appellant's Brief at 1–14. Some of those facts do not directly bear on any appellate issue, and many relate to the property division that awarded the rental property to Shepherd, her sale of that property, and Haralovich's alleged noncompliance with his child support obligations. Shepherd's fact statement discusses at length the orders and reconsideration motions that culminated in the September 2004 order. Appellant's Brief at 1–14. It consequently describes a variety of superior court issues and rulings that are not at issue on appeal.

Part VIII is the brief's argument part. It contains three sections. The first section discusses "applicable case law." This section discusses only the legal standard for deciding whether to impute income. Appellant's Brief at 15–17. It does not discuss how any imputed amount should be calculated. It focuses on demonstrating that income may be imputed only if a parent is voluntarily and unreasonably unemployed or underemployed. Appellant's Brief at 17.

The second and third sections of appellant's argument part both address imputed rental income. Both presuppose that the superior court imputed rental income to Shepherd. Both therefore state the issues in even more limited fashion than the two issues described in Part V, which lists the issues presented for review.

Thus, the second argument section argues that it was error to impute *rental* income to Shepherd for property she no longer owns. Appellant's Brief at 21. Nothing in that section discusses income tax liability; it largely focuses on her contention that she acted reasonably and involuntarily in 2003 when she sold the only rental property she owned, and that the standard for imputing income was therefore not met.[14] Appellant's Brief at 19–21. There is no basis in this argument section for granting her any appellate relief if, as the entire court agrees, the superior court did not in fact impute any *rental* income to Shepherd.[15]

The third argument section argues that the record does not support imputing to Shepherd net *rental* income of $21,288. Appellant's Brief at 21. It also contains ancillary arguments, all relating to imputation of rental income. None of those arguments asserts that the superior court erred in basing the income calculation on the one-year experience of zero tax liability. Appellant's Brief at 22–23. None challenges "the correctness of the trial court's assumption in calculating child support that there would be no federal income tax liability," as this court describes the issue before deciding whether it was "raised and argued sufficiently so as to be properly before us on appeal."[16] Critical to her argument that there was a calculational error is Shepherd's contention that the superior court imputed a substantial amount of *rental* income to her. But all members of this court agree that there was no imputation

---

**13.** This is the part that, per Appellate Rule 212(c)(1)(G), "shall provide a brief description of the case and a concise statement of the course of proceedings in, and the decision of, the trial court. Appellant shall state the facts relevant to each issue, with references to the record as required by paragraph (c)(8), in this section or in the appropriate argument sections."

**14.** To impute employment income, a court must first find voluntary and unreasonable unemploy-

ment or underemployment. Majority at 647 (citing Alaska Civil Rule 90.3(a)(4)). Shepherd relies on the standard for imputing employment income, but she is actually contending that the superior court imputed rental, not employment, income to her. Appellant's Brief at 17, 19–21.

**15.** Majority at 648–49.

**16.** Majority at 649.

of rental income.[17] We thus unanimously reject the root of her argument. Her claim of calculational error, as argued, withers away.

Part IV.B of the court's opinion concludes that Shepherd raised and sufficiently argued the issue of income tax liability.[18] I disagree. Surely Haralovich will too, when he learns to his surprise that the only issue on which the court remands is one that Shepherd has not argued on appeal and which Haralovich therefore had no reason to think he should address either.

I do not think Shepherd has preserved the issue merely by unfavorably characterizing in the facts section of her brief the superior court's decision not to give her credit for any income tax deductions.[19]

I also do not think that the portion of Shepherd's argument section quoted at length on page 650 of the court's opinion refers, expressly or implicitly, to Shepherd's income tax liability. Shepherd argues in that passage only that if any rental income is to be imputed to her, it should be only the average of her rental income over two years, including a year in which she earned no rental income.[20] Appellant's Brief at 25. This reading of the argument is supported by Shepherd's reply brief, which states that "the matter now properly before this Court [is] [d]id the trial court erroneously impute nonexistent rental income from long-sold property to appellant?" Reply Brief at 1. Her reply brief later reiterates the dispute as she sees

it: "the issue properly before this court [is] imputation of income to Ms. Shepherd from real property previously sold." Reply Brief at 8.

The court reads passages in Shepherd's brief as discussing and raising the issue, at least implicitly.[21] But all of the passages discussed by the court's opinion on pages 649–50 are found only in the fact portion, not the argument portion, of appellant's brief. The passage quoted in the opinion at pages 649–50 says nothing of an alleged error in assuming zero tax liability. That passage speaks of "0" *rental income*, not of an erroneous assumption there was "0" *tax*.[22]

The issue perceived by the court is not "implicit" nor can it be characterized as having received even "minimal treatment."[23] If the issue had been raised, one would expect Shepherd's lawyers to have cited some authority to demonstrate the error, presumably the same Civil Rule the court cites in confirming that income tax is to be deducted from gross income.[24] But the passage of the brief quoted at page 650 of the opinion says nothing of a failure to deduct taxes, cites no rule or case discussing a deduction for taxes, and only refers to the tax returns to demonstrate that rental income dropped to zero in 2003. Appellant's Brief at 25. This argument is made to support Shepherd's claim the rental income should be averaged, not that tax payments should be deducted. Appellant's Brief at 25.[25]

17. Majority at 649–50.

18. Majority at 649–50.

19. The distinction between the fact and argument sections of the brief may seem, at first glance, to be unduly harsh. It is not, for two reasons. First, Alaska Appellate Rule 212(c)(1)(I) and our case law both explicitly require that issues be preserved in the argument portion of the brief. Second, if we permit parties to treat negative characterizations of the superior court's decision as if they were legal arguments, we allow them to unfairly surprise their adversaries. Following this case, parties will be required to carefully parse the facts for any lurking legal issues, even if their opponent is represented by legal counsel. Moreover, parties often include a thorough discussion of the procedural history of a case, partly because our rules seem to encourage it, and perhaps also to give some indication whether any alleged error was harm-

less or prejudicial. Treating this history as argument, at least for represented appellants, can only lead to surprise and confusion.

20. Majority at 649–50.

21. Majority at 649–50.

22. Compare Majority at 650 with Shepherd's quoted passage.

23. Majority at 649–50.

24. Majority at 650 (citing Alaska Civil Rule 90.3(a)(1)(A)(i)).

25. Comparing appellant's brief with the statement of points appellant filed when she commenced her appeal, see footnote 8, above, confirms that she has not argued the issue, even

The topic *did* come up briefly at oral argument, but only because a member of this court asked Shepherd's counsel if the September order was in error because the superior court assumed that Shepherd's normal federal income tax liability was zero. Not surprisingly, counsel agreed, recognizing a slow pitch when he saw one, but nothing in appellant's briefs raised that question. And if a member of the court had not asked that question, the topic would not have been mentioned at argument. Parties may not raise new issues at oral argument.[26] That the court sua sponte raised the topic at argument does not excuse Shepherd's failure to preserve the issue. Haralovich, representing himself, had no adequate warning that he should be prepared to discuss a topic not mentioned in the briefs.

Finally, even if Shepherd's opening brief could be charitably read to have mentioned the issue, it was mentioned so indirectly and obscurely that we should hold the discussion was too cursory to have preserved the issue.

We should therefore affirm every aspect of the superior court's final order denying reconsideration. I join in the court's opinion to the extent it affirms the superior court's order denying reconsideration.

implicitly. The relevant words in her second point on appeal are "mandatory deductions," "gross income," and Civil Rule "90.3." "Mandatory," "deductions," "gross income," and "90.3" appear nowhere in the table of contents (and thus the argument headings), the list of issues, the standard of review, or the conclusion sections of appellant's brief. The words "mandatory," "deductions," and "gross income" appear nowhere in the three parts of appellant's argument section of her brief. And the references to Rule 90.3 in the argument section are never offered to support any contention that income

taxes must be deducted from gross income, or that the superior court erred in calculating income tax liability or deductions due for income tax liability. The statement of points on appeal therefore implies that Shepherd's attorneys chose to waive the argument on appeal.

**26.** *See Petersen v. Mut. Life Ins. Co. of N.Y.*, 803 P.2d 406, 411 (Alaska 1990) (holding that when appellant's brief does not raise an argument, issue is waived).