NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KIERSTON R., | ) | |
| | ) | Supreme Court No. S-15825 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-13-01270 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| EUGENE R., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1605 – December 21, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Kierston R., pro se, Wasilla, Appellant. Colleen R. Baxter, Law Office of Colleen R. Baxter, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices.

# I.    INTRODUCTION

The superior court granted sole legal and primary physical custody of a child to her father, concluding that this award was in the child's best interest. Because of its findings on domestic violence, the court ordered that the mother's visitation with the child be supervised until she completed a batterer's intervention program. The court also imputed income to the mother for purposes of calculating child support. The mother

---

[*]    Entered under Alaska Appellate Rule 214.

challenges these rulings, arguing primarily that the superior court failed to give proper weight to her trial testimony on the issues of domestic violence and her earning ability. But because the superior court's findings of fact are not clearly erroneous and its imputation of income was not an abuse of discretion, we affirm.

## II. FACTS AND PROCEEDINGS

Kierston R. and Eugene (Gene) R. were married in April 2006 and separated in December 2014. The couple has one child together, a daughter who was seven years old at the time of trial.

Gene is an airline mechanic. Kierston is a trained massage therapist, though her most recent job in her field ended in August 2014. Kierston testified at trial that she could no longer work as a massage therapist because of "a bad back caused by a 2010 vehicle accident."

The superior court heard from a number of witnesses besides Kierston and Gene, including friends, neighbors, family members, and teachers. At the close of the evidence, and pending issuance of a written ruling, the court awarded the parents joint legal custody but awarded primary physical custody to Gene. The court noted its concerns with both parents' alcohol use but expressed its doubts about Kierston's credibility, pointing out inconsistencies in the presentation of her claimed disability and concluding that "I could go on for probably 10 more minutes on it, but I don't think it's necessary."

The court's written findings of fact and conclusions of law, issued a month later, determined it to be in the child's best interests that Gene be awarded sole legal and primary physical custody. Addressing the statutory best interest factors,[1] the court found that Gene was "more capable of providing for [the child's] physical and emotional needs,

---

[1] *See* AS 25.24.150(c)(1) – (9).

including getting her to school on time"; that Gene was "better suited, temperament-wise, and willing to support [the child's] relationship with her mother, than vice versa"; that Kierston's temperament was "a significant concern" because of her "significant anger issues"; that Kierston had threatened or committed domestic violence against Gene on several occasions; and that Kierston's "excessive use of alcohol impacts her ability to care for" her daughter. The court again noted its concern with Gene's alcohol use but concluded that it had not "negatively impacted [the child]."

The superior court also found that because Kierston had "committed two or more acts of domestic violence against Gene . . . , the presumption of AS [25].24.150(g) [against awarding custody to the perpetrator] is applicable." [2] The court first noted Gene's testimony that in 2014 Kierston "struck him in the face with the television remote control, leaving significant bruising." The court also credited a second incident that had arisen post-trial, when Gene testified at a hearing on a domestic violence petition that Kierston had surreptitiously put methadone in his food or drink, "making him violently ill."

On appeal, Kierston contends that: (1) the superior court erred in its best interests analysis when it concluded that Gene should have sole legal and primary physical custody of their daughter; (2) the court erred when it found that Kierston had a history of domestic violence; (3) the court "erred in its findings regarding Kierston's earnings and income potential"; and (4) the court abused its discretion by not discrediting some of Gene's evidence.

---

[2]    *See* AS 25.24.150(h) (stating that "more than one incident of domestic violence" constitutes "a history of perpetrating domestic violence" for purposes of the presumption). The court found a third incident of domestic violence based on a verbal threat, but because two incidents are sufficient to trigger the presumption of AS 25.24.150(g), we find it unnecessary to discuss whether the threat was appropriately characterized.

## III. STANDARD OF REVIEW

"A superior court has broad discretion in determining child custody matters."[3] "We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony," because it is the trial court's function "to judge the credibility of witnesses and to weigh conflicting evidence."[4]

"Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[5] "But whether the court used the proper legal standard for applying the domestic violence presumption — including whether the court's findings support applying the presumption — is a question of law, which we review de novo."[6]

"We review under an abuse of discretion standard the court's decision to impute income; we use a clearly erroneous standard for the decision regarding the amount of income to impute."[7] "Assessing whether a parent is voluntarily underemployed is a question of fact, and we review factual findings for clear error."[8]

---

[3] *Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010).

[4] *Ronny M. v. Nanette H.*, 303 P.3d 392, 399 (Alaska 2013) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 666 (Alaska 2005)).

[5] *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014) (citing *Misyura v. Misyura*, 242 P.3d 1037, 1039, 1041 (Alaska 2010)).

[6] *Id.* (citing *Rego v. Rego*, 259 P.3d 447, 452, 460-61 (Alaska 2011)).

[7] *Reilly v. Northrop*, 314 P.3d 1206, 1212 (Alaska 2013) (citing *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 473 (Alaska 2012); *Sawicki v. Haxby*, 186 P.3d 546, 551 (Alaska 2008); *Shephard v. Haralovich*, 170 P.3d 643, 647 (Alaska 2007)).

[8] *Id.* (citing *Robinson v. Robinson*, 961 P.2d 1000, 1004 (Alaska 1998)).

Finally, "[w]e review the superior court's evidentiary rulings for abuse of discretion."[9]

## IV. DISCUSSION

### A. The Superior Court's Findings Regarding The Domestic Violence Presumption Are Sufficient To Justify Its Award Of Custody.

Kierston primarily challenges the superior court's analysis of the best interest factors under AS 25.24.150(c). The court considered domestic violence as one of those factors, but it applied the presumption of AS 25.24.150(g) only to require that Kierston's visitation be supervised until she had completed a batterer's intervention program. The court did not rely on the presumption as an alternative basis for its award of custody to Gene, though it could have, since its findings on domestic violence, if not clearly erroneous, were alone sufficient to justify the award. Therefore, rather than analyzing all the statutory best interest factors as the superior court did, we focus on the determinative issue of whether Kierston had a history of domestic violence that triggered the statutory presumption against awarding her custody.

Alaska Statute 25.24.150(g) establishes "a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child." A "history of perpetrating domestic violence" means either "that, during one incident of domestic violence, the parent caused serious physical injury," or "that the parent has engaged in more than one incident of domestic violence."[10] "Domestic violence" in the custody

---

[9] *Noffke v. Perez*, 178 P.3d 1141, 1144 (Alaska 2008) (citing *Bierria v. Dickinson Mfg. Co.*, 36 P.3d 654, 657 (Alaska 2001)).

[10] AS 25.24.150(h).

statutes "has the meaning given in AS 18.66.990,"[11] which in turn defines the term by reference to a number of criminal statutes, including those addressing assault and other crimes against the person, criminal trespass, violating a protective order, and harassment. The statutory presumption against custody may only

> be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.[12]

We conclude that the evidence supports the superior court's findings that Kierston committed at least two acts of domestic violence, triggering the statutory presumption against awarding her custody.

### 1.    The television remote incident constituted domestic violence.

Kierston first denies that she struck Gene in the face with a television remote; she labels the superior court's factual findings about the incident "clearly erroneous, in light of the inconsistences in various witnesses' account[s] of this incident." But the only witnesses who testified about it were Gene, his adult daughter, and Kierston, and the court found Kierston generally not credible. Gene testified that Kierston threw two remotes at him, and one went "flying by me and the other one clock[ed] me alongside my face." As the court summarized the testimony of Gene's

---

[11]    *Stephanie F. v. George C.*, 270 P.3d 737, 750 (Alaska 2012) (citing AS 25.90.010).

[12]    AS 25.24.150(h).

adult daughter, the next day she saw "her father sitting in his room with the lights off"; "[w]hen she turned on the light, he began crying and she saw his bruised face." She took photographs that were admitted at trial.[13] We accord great deference to the superior court's assessment of evidence's probative value, especially when the evidence is presented as oral testimony and the court has had the opportunity to judge the witnesses' credibility.[14] We cannot say that the court clearly erred when it found that this incident happened as Gene described it.

Kierston also argues it was legal error to "classify this alleged act as a crime of domestic violence" because it does not fit the definition of any of the crimes listed in AS 18.66.990 as constituting domestic violence. But assault in the fourth degree, defined as "recklessly caus[ing] physical injury to another person,"[15] is covered by the statute. Kierston argues that "mere bruising" cannot meet the applicable statutory definition of "physical injury," which is limited to "a physical pain or an impairment of physical condition."[16] The superior court found that Gene had "significant bruising," as shown in the photographs, and his daughter's testimony confirmed that he suffered as a result. And a landed blow even without bruising can cause "physical pain" and therefore

---

[13] Kierston argues that the photographs were obviously "falsified or staged" because Gene's daughter testified they were from June 2014 but the event occurred in February 2013. But Gene also testified that the photographs were from his 2013 injury, and the superior court could reasonably have concluded that his daughter was simply mistaken about the date.

[14] *Kristina B. v. Edward B.*, 329 P.3d 202, 207 (Alaska 2014) ("We afford particular deference to factual findings based primarily on oral testimony, because the trial court is better suited to judge the credibility of witnesses and weigh conflicting evidence.").

[15] AS 11.41.230(a)(1).

[16] AS 11.81.900(b)(47).

"physical injury" for purposes of the fourth degree assault statute.[17] The superior court did not clearly err when it found the television remote incident to constitute an act of domestic violence.

### 2. The methadone incident constituted domestic violence.

At a post-trial hearing on a domestic violence petition, the superior court found "by a preponderance of [the] evidence that [Kierston] drugged [Gene] with methadone, making him violently ill." It found this incident to constitute "assault or reckless endangerment" and consequently another act of domestic violence. Kierston does not challenge these findings on appeal but argues again that her actions did not qualify as an assault. She contends that Gene's injuries "do[] not, as a matter of law, rise to the level of 'serious physical injury' under the relevant criminal statute; it was not serious or protracted, and did not create a substantial risk of death."

Again, the law and the evidence support the superior court's decision. As noted above, assault in the fourth degree constitutes domestic violence and requires "physical injury," not "serious physical injury."[18] Methadone is a strong opioid; Gene testified that it caused him to suffer severe vomiting and a fever of 102 degrees. A treating physician confirmed that Gene suffered "nausea with vomiting, malaise and

---

[17] *See Eaklor v. State*, 153 P.3d 367, 368 (Alaska App. 2007) (affirming a conviction for fourth-degree assault in part because the defendant's punch caused the victim "some sort of [physical] pain"). *Compare Dawson v. State*, 264 P.3d 851, 853 (Alaska App. 2011) (affirming a woman's conviction for fourth degree assault on evidence that she hit her domestic partner with her fists and threw a baking pan at him, although he testified "that he had not suffered pain (other than emotional pain) during the attack"), *with Dawson v. State*, No. A-10137, 2010 WL 1256326, at *3 (Alaska App. Mar. 31, 2010) (in earlier appeal, observing that "the jury had to evaluate the credibility of [the victim's] testimony that Dawson's assault had not caused him physical pain").

[18] Under AS 18.66.990(3)(A), assault in the fourth degree (AS 11.41.230) constitutes domestic violence for purposes of AS 25.24.150(g).

fatigue, [and an] altered mental state." The superior court could reasonably find that Kierston's conduct in this incident, too, constituted assault in the fourth degree.[19]

### 3. The presumption precluded an award of custody to Kierston.

Because the superior court's finding that Kierston had a history of domestic violence is consistent with the governing statutes and not clearly erroneous, the statutory presumption of AS 25.24.150(g) precluded an award of custody to her unless she overcame the presumption. Kierston does not argue on appeal that she did overcome it, and the court's very specific and extensive findings about her substance abuse and the other best interest factors persuade us that such an argument would not likely have succeeded. We therefore affirm the superior court's award of sole legal and primary physical custody of the child to Gene.

### B. The Superior Court Did Not Clearly Err In Its Earnings Calculations.

Kierston argues briefly that the superior court erred when it found that she was capable of working at least 20 hours per week as a massage therapist, as she had done most recently in August 2014, and "imputed to [her] wages of $41,600" for purposes of calculating child support. She asserts that "[t]he finding was unsupported by evidence that [she] was capable of working sufficient hours to earn such a salary, or that she was capable of finding a job that would pay her this salary, in light of both her enduring physical limitations and the limited market for massage therapists."

Alaska Civil Rule 90.3(a)(4) allows the superior court to impute income to a parent if the court finds that the parent is "voluntarily and unreasonably . . .

---

[19] The methadone incident may also have constituted reckless endangerment, as the superior court noted at the domestic violence hearing, if the evidence supported a finding that Gene, though not seriously injured, faced a *substantial risk* of serious physical injury. *See* AS 11.41.250(a). But because we agree that the evidence supported a finding of assault, we need not address other possibilities.

unemployed or underemployed."[20]  "In deciding whether to impute income, the superior court should consider the totality of the circumstances,"[21] but an important component is the voluntariness of the parent's conduct.  "The key inquiry is whether the lack of employment is the result of 'economic factors' or of 'purely personal choices.' "[22]  The superior court is required to make specific findings on the amount of imputed income, but "[g]enerally speaking, '[a] trial court is granted discretion to choose "the best indicator of . . . future earning capacity" and to "impute income based upon the 'most complete evidence before it." ' "[23]

Arguing that her unemployment is not voluntary, Kierston relies on her testimony "that she was currently able to work no more than fifteen hours per week" due to her alleged back injury.  But the superior court was not obliged to accept this testimony.  In fact, the court specifically rejected Kierston's description of her disability, finding it inconsistent with the court's own observations of her in the courtroom.[24]  The court also noted that Kierston had been expected to perform five massages per day while employed at the medical clinic in 2014 and never complained of a disability or missed

---

[20]     Alaska R. Civ. P. 90.3(a)(4).

[21]     *Reilly v. Northrop*, 314 P.3d 1206, 1213 (Alaska 2013).

[22]     *Id.* (quoting *Nunley v. State, Dep't of Revenue, Child Support Enf't Div.*, 99 P.3d 7, 11 (Alaska 2004)).

[23]     *Id.* at 1217 (second and third alterations in original) (quoting *Ward v. Urling*, 167 P.3d 48, 55 (Alaska 2007)).

[24]     Kierston also mentions some documentary evidence , such as doctor's notes and clinical impressions that suggest she has limited mobility.  But the trial court was in the best position to weigh this evidence in the balance along with its own impressions of Kierston and the testimony of witnesses.  *See Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) ("[T]he trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence.").

a day of work due to illness. The court credited testimony that Kierston continued to do gardening and other work around the house without a problem. The court's finding that she overstated her disability is supported by the evidence and is not clearly erroneous.

Kierston also points to her testimony that when she worked in recent years "the amount she had been making was no more than $15,000 to $20,000" due to poor market conditions for massage therapists. But Kierston conceded in her own testimony that she would be able to find work for at least 30 hours a week "[i]f [she] were healthy" — which the court found she was. The court heard other supporting evidence as well. For example, when Kierston initially sought a massage therapist job she was hired for part-time work at five different locations; and although she argued that the market for her skills was worse at the time of trial, her testimony showed that she turned down available massage therapy work because she feared injuring herself (a fear the superior court refused to credit).

The evidence thus supported the superior court's finding that Kierston was voluntarily unemployed and that she was capable of obtaining 20 hours of work per week at $45 per hour. On these findings, it was not an abuse of discretion to impute income to her for purposes of calculating child support.[25]

## V.   CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[25]   Kierston finally argues that the superior court erred by failing "to reprimand Gene for lying on the stand" when he testified that he did not own a storage unit although other evidence showed that he did. Assuming her argument has merit, she failed to seek a sanction for the allegedly false testimony in the superior court, and the issue is waived. *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal.").